(58 Misc. Rep. 258.)

### In re CLANCY.

(Supreme Court, Special Term, Orange County. February, 1908.)

1. INTOXICATING LIQUORS—LOCAL OPTION ELECTIONS—RESUBMISSION OF LOCAL OPTION QUESTIONS—"PROPERLY SUBMITTED."

The words "not have been properly submitted," in Liquor Tax Law, Laws 1900, p. 853, c. 367, § 16, providing that, where the local option propositions shall "not have been properly submitted" at the biennial town meeting, the propositions shall be submitted at a special town meeting, are not restricted to the casting of the vote and the proceedings preliminary thereto, but include as well the counting and certifying of the vote and the declaring of the result; and a submission of the questions is not complete until the vote is canvassed and the result ascertained.

**2. SAME.**

Under Liquor Tax Law, Laws 1900, p. 853, c. 367, § 16, providing for the calling of a special town meeting for the resubmission of the local option propositions on the filing of a petition therefor and an order of the court, sufficient reasons being shown, the court, in determining an application for a resubmission, may exercise a reasonable discretion; and an application should be denied where the true result of the election has been ascertained and declared, and there is no reasonable ground to apprehend that any irregularity affected the result, and the failure to give a voter the opportunity to vote on any of the propositions, or of errors in counting the votes or in making the returns, is no ground for resubmission, where the irregularities did not affect the result.

In the matter of the petition of Timothy T. Clancy for a resubmission of the local option questions in the town of Newburgh, Orange county. Denied.

Charles W. U. Sneed, for petitioner.

Russell Headly, W. P. Borden, and A. H. F. Seeger, for respondents.

MILLS, J. This is an application by a taxpayer, elector, and hotel proprietor of the town of Newburgh, Orange county, under section 16 of the liquor tax law (Laws 1900, p. 853, c. 367), for the resubmission to the electors of that town, at a special election, of the usual four local option questions or propositions, which were submitted to them at the general election held therein on the 5th of November last. That town has four election districts, and complaint is here made of that election only in the Fourth election district, and there only as to the fourth proposition or question, viz., that as to "selling liquor by hotel keepers only." The return finally made by the inspectors of election of that district shows that upon that proposition or question 56 affirmative and 64 negative votes were cast. It is conceded that the election thereon in the other three districts resulted in a tie vote, so that by the declared vote in that (the Fourth) district such fourth proposition or question was answered in the negative by a majority of eight votes.

The petitioner complains that the election officers of that district, at that election, were guilty of such acts of misconduct and irregularity in managing the election and in ascertaining and declaring the result thereof as to the fourth proposition or question that the court should hold that the four propositions "were not properly submitted at such biennial town meeting," viz., said general election, and therefore that the resubmission and the necessary special election should be ordered. It is apparent from the papers before me that the election officers did at such election commit certain irregularities as to such fourth proposition ·or question, although I am entirely satisfied that there was no intentional misconduct upon their part.

Respecting the matter of resubmission, section 16 of the liquor tax law provides as follows:

"If for any reason, except the failure to file any petition therefor, the four propositions provided to be submitted herein to the electors of a town shall not have been properly submitted at such biennial town meeting, such propo-

sitions shall be submitted at a special town meeting duly called. But a special town meeting shall only be called upon filing with the town clerk the petition aforesaid and an order of the Supreme or County Court or a justice or judge thereof respectively which may be granted upon eight days' notice to the State Commissioner of Excise, sufficient reason being shown therefor."

The legal problem at once arises here: What is the meaning of the words "not have been properly submitted," contained in the above statutory provision, viz.: (1) Is their meaning restricted to the casting of the vote and the proceedings preliminary thereto, as a strict construction of the words might indicate, or do those words include as well the counting and certifying the vote and the declaring of the result? and (2) has this court any discretion in the matter; i. e., must it order the resubmission and the special election, if it appears that the submission had was improperly conducted in any substantial respect? The only authority upon this point submitted in the briefs of counsel is Matter of Burrell, 50 Misc. Rep. 261, 100 N. Y. Supp. 470. I quite agree with the view, therein expressed, "that the submission of the questions is not complete until the vote is canvassed and the result ascertained." Indeed, it would seem that any effective submission must comprehend the ascertaining and the declaring of the result of the vote. All the prior proceedings must be regarded only as means to that end. I think, also, that the court, in passing upon such an application, must, by fair and reasonable implication, have the discretion to refuse to order resubmission and a special election, provided it concludes that the irregularities in the conduct of the election officials were not such as to involve the result in any reasonable doubt. As a general rule misconduct or irregularities on the part of the election officials will not be permitted to vitiate an election, if the true result thereof be apparent. In such case, in an appropriate proceeding, the court will maintain and effectuate that result.

Section 16 of the liquor tax law in my judgment gives to the court, in determining such an application as this, a reasonable discretion. I think, therefore, that such an application should be denied, when the court can see from the papers that the true result of the election has been ascertained and declared and that there is no reasonable ground to apprehend that any such misconduct or irregularity affected such result so as to change it. Indeed, if this be not the rule, there would be few such elections where a resubmission at a special election could not be secured, as there are few elections at which the election officers do not commit some irregularity. It would be contrary to all precedent and the unbroken practice of many years to hold that the will of the people, so ascertained and declared, can be set aside for any such cause.

Upon a careful review of the affidavits and consideration of the briefs submitted, I conclude that the irregularities asserted by the petitioner could not possibly have changed the result of the election in the Fourth district upon the fourth question. This is apparent from the following consideration of the errors claimed: The majority returned in the negative is 8; i. e., 56 affirmative and 64 negative votes.

The petitioner claims that at the opening of the polls no excise ballot whatever was given to a single voter, and that he therefore voted without having the opportunity to vote upon any of the four local option propositions. Assuming that such voter would have voted in the affirmative, the most that the petitioner can claim by reason of this matter is that the negative majority should be reduced to one; that is, from 8 to 7.

The petitioner further claims that the return made by the inspectors of the Fourth election district should have given upon the fourth proposition or question 57, instead of 56, affirmative votes. This claim is based upon the fact that the original minute of the count made by the poll clerk shows, as to the split ballots, the first tally as containing five perpendicular marks, whereas the usual practice is for it to show only four, as the other tallies show; the fifth count being in the cross line. In making their return the inspectors evidently treated the first tally as counting only five, according to the usual practice. The claim of the petitioner here is that they should have treated it as counting six. If this contention be sustained, then the negative majority would be still further reduced by one; i. e., from 7 to 6.

It is clear that the two ballots marked for identification, as appears upon said original minute of the count, were the two ballots which were found folded together. As the total number of ballots found did not overrun the number cast, those two, being affirmative ballots, should have been counted as such. So counting them here, they still further reduce the majority; i. e., from 6 to 4.

There is nothing tending to show that the two ballots, which appear as "void" in such original minute, were not in fact and law void, or that they were such that upon any possible view they could have been counted for either side. Giving, however, to the negative the benefit of every possible doubt, the majority might be still further reduced by two; i. e., from 4 to 2.

The only other question presented is that of the so-called missing or unaccounted for ballots. The return shows that the whole number of votes given on the fourth proposition was 167. Such original minute, the correctness of which is verified by the affidavits of two inspectors, shows upon each of the four propositions: "Total blank ballots, 27; marked for identification, 2; void, 2"—thus accounting for 31 (i. e., 27 + 2 + 2) uncounted votes or ballots out of the total 167 votes or ballots cast upon the fourth proposition. Upon the fourth proposition the return shows 56 affirmative and 64 negative votes, or 120 counted votes in all, or 121, if the affirmative votes be taken as 57. Thus, upon that proposition, 15 or 16 votes (i. e., 167 — 31 — 120 or 121) remain unaccounted for. By the same method of computation it is seen that upon the first proposition 33 votes, the second 45, and the third 47 votes, remain unaccounted for by the return and the original minute of the count. The explanation of this apparent and technical deficiency is clearly, and to my mind satisfactorily, given in the affidavits of the two inspectors, to the effect that they regarded and entered as blank ballots only those upon which there

was found no vote upon any of the four propositions, and that the so-called missing or unaccounted for ballots are merely those upon which there was a vote upon some, but not upon all, of those propositions. Thus as to the fourth proposition, there were 15 or 16 ballots which contained no vote upon that proposition, but did contain a vote upon at least one of the other three propositions. The discrepancy or deficiency is therefore seen to be only apparent and technical, and not real. It is clear that the matter can in no manner have affected the result.

I am entirely satisfied that the election in the Fourth district resulted in a negative majority of 2 beyond all possible question, and of at least 4 in all reasonable probability upon the fourth proposition or question. Therefore it is my conclusion that the resubmission and special election should not be ordered. I do not think that a special election or resubmission should be directed, except in a clear case. Aside from the matter of the incidental inconvenience and expense, it is a matter of common experience, and therefore well known, that such a special election cannot be a substantial repetition or reproduction of the general election. Many, or at least some, of the electors, from their interests in other matters involved, viz., the election of officers, attend the general election, and when there vote upon one or more of the special propositions submitted, when they would not attend a special election at all, held for the submission solely of such special propositions.

The application is therefore denied.