(75 Misc. Rep. 180.)

### In re NORTON.

(Supreme Court, Special Term, Washington County. January, 1912.)

1. INTOXICATING LIQUORS (§ 35*)—LOCAL OPTION—SUFFICIENCY OF SUBMISSION.

Under Liquor Tax Law (Consol. Laws 1909, c. 34) § 13, providing that, if for any reason the four propositions to be submitted have not been properly submitted at the biennial town meeting, they shall be submitted at a special town meeting duly called, the canvass of the vote is part of the submission, and the questions have not been properly submitted, unless the vote has been properly canvassed and a return made.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 42; Dec. Dig. § 35.*]

2. INTOXICATING LIQUORS (§ 25*)—LOCAL OPTION—"SUBMIT."

In Liquor Tax Law (Consol. Laws 1909, c. 34) § 13, providing that, if the four propositions shall not have been properly submitted at the biennial town meeting, they shall be submitted at a special town meeting duly called, to "submit" means to present and leave to the judgment of the qualified voters.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 31; Dec. Dig. § 25.*

For other definitions, see Words and Phrases, vol. 7, pp. 6719, 6720.]

3. INTOXICATING LIQUORS (§ 25*)—LOCAL OPTION—"PROPERLY."

In Liquor Tax Law (Consol. Laws 1909, c. 34) § 13, the word "properly" means in a proper manner; that is, in the manner prescribed by law.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 31; Dec. Dig. § 25.*

For other definitions, see Words and Phrases, vol. 6, p. 5692; vol. 8, p. 7768.]

4. INTOXICATING LIQUORS (§ 38*)—LOCAL OPTION—RESUBMISSION OF QUESTION.

Under Liquor Tax Law (Consol. Laws 1909, c. 34) § 13, where the inspectors of election have failed to file the original statement provided by Election Law (Consol. Laws 1909, c. 17) § 373, and to seal the ballot

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

box and return it to the proper custodian as provided by section 374, and the affidavits of the inspectors show that they have not the necessary information to make such statement, their disregard of the mandatory provisions of the statute renders the submission of the local option questions improper, and they will be resubmitted at a special town meeting.

[Ed. Note.—For other cases, see Intoxicating Liquors, Dec. Dig. § 38.*]

5. INTOXICATING LIQUORS (§ 36*)—LOCAL OPTION—IRREGULARITIES IN ELECTION.

That the town clerk did not furnish proper blanks at a local option election, and the proper tally sheet, does not excuse the failure of the inspectors to make the original statement of the canvass.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 43, 44; Dec. Dig. § 36.*]

6. INTOXICATING LIQUORS (§ 38*)—LOCAL OPTION—RESUBMISSION OF QUESTION.

On an application for the resubmission of the four local option questions, an objection that it does not appear that the required petition for the special town meeting and for the submission has been made will be overruled, since such petition and order of court must be filed with the town clerk, and not presented to the court in proceedings to procure the order.

[Ed. Note.—For other cases, see Intoxicating Liquors, Dec. Dig. § 38.*]

Application by Enoch B. Norton for an order directing a resubmission of local option questions to the electors of the town of Hartford, pursuant to Liquor Tax Law (Consol. Laws 1909, c. 34) § 13. Granted.

Clarence E. Parker, for petitioner.
Jere M. Cronin (John H. Barker, of counsel), for interveners.

VAN KIRK, J. This is an application under section 13 of the Liquor Tax Law (Consol. Laws 1909, c. 34) for a resubmission of the four local option propositions provided for. The statute in this respect reads as follows:

"If for any reason except the failure to file any petition therefor, the four propositions provided to be submitted herein to the electors of a town shall not have been properly submitted at such biennial town meeting, such propositions shall be submitted at a special town meeting duly called. But a special town meeting shall only be called upon filing with the town clerk the petition aforesaid and an order of the supreme or county court, or a justice or judge thereof, respectively, which may be granted upon eight days' notice to the state commissioner of excise, sufficient reason being shown therefor Upon any application for such order, the town board, or any taxpayer in the town, may intervene as a party and be heard in opposition thereto."

In this case two taxpayers have intervened and are opposing the application.

[1] The irregularities of which the petitioner complains occurred after the opening of the polls. In most of the reported cases the defects complained of occurred before election day, and it is now claimed by the interveners that the submission does not include the taking of the vote upon election day, the canvassing of the vote, and the return to the canvass.

[2] In my judgment, the correct position was taken in Matter of Burrell, 50 Misc. Rep. 261, 100 N. Y. Supp. 470, where it is held that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the canvass of the vote is a part of the submission of the local option questions. Here, to submit means to present and leave to the judgment of the qualified voters. A case is submitted to the court when the facts have been presented by the evidence or by affidavits, the arguments had, and the case left with the court for decision. In this election everything necessary to reach the judgment of the qualified voters is a part of the submission; that is, all the proceedings preparatory to the election, the proceedings upon election day, including the count of the ballots, and the return. The qualified voters cast their ballots, but the procuring of their judgment requires that the election shall be conducted and the ballots counted before the decision of the electors can be known. The voters do not and cannot count the ballots or make return of the canvass. This holding is in harmony with the fact that irregularities occurring after the opening of the polls have been considered on application for resubmission. Matter of Clancy, 58 Misc. Rep. 258, 109 N. Y. Supp. 644; People v. Pierson, 35 Misc. Rep. 406, 71 N. Y. Supp. 993, affirmed 64 App. Div. 624, 72 N. Y. Supp. 1123.

[3] I have not found any case which specifically decides what the meaning of the words, "properly submitted," is. "Properly" is defined to be and means here, "in a proper manner." In "the proper manner" is in the manner prescribed by the law. The Liquor Tax Law provides the manner of the submission. In the adjudged cases, if a mandatory statute regulating the submission has been disregarded, the submission has been held improper. In Matter of Town of La Fayette, 105 App. Div. 25, 93 N. Y. Supp. 534, the complaint was that the clerk had failed to give the required five days' notice of the fact that the local option questions would be voted on at the coming election. The Appellate Division in the Fourth Department held that this rendered the submission improper. In Matter of Town of Livingston, 120 App. Div. 899, 105 N. Y. Supp. 1145, the complaint was that the clerk had not published the required notice under the Liquor Tax Law. The Appellate Division in this department affirmed the order of the lower court for a resubmission upon the authority of Matter of Town of La Fayette. The Court of Appeals unanimously affirmed (189 N. Y. 549, 82 N. E. 1133), upon the ground that the statutory provision requiring the notice to be published is mandatory. The conclusion to be drawn from these decisions is that a failure to comply with a mandatory provision of the statute in submitting the propositions occasions an improper submission; and it is not necessary to show, in order to secure a resubmission, that there was not a full vote, that the resubmission is likely to result differently, or that a party has been prejudiced. There is a plain distinction to be held in mind between reviewing the local option vote under the Liquor Tax Law and reviewing a vote taken at a general election. In the latter case, the controlling element is whether or not the electors have fairly expressed their choice. The courts will not disfranchise voters because of irregularities or because of misconduct of election officers at a general election. People v. Wood, 148 N. Y. 142, 42 N. E. 536. There is no provision for a resubmission in the case of election of

officers, but the Liquor Tax Law provides for a resubmission of the local option questions where they have not been properly submitted. "Properly" is not the exact synonym of "legally," else the natural words to have used would have been "legally submitted." Where a resubmission is ordered, the vote is to be taken at a special town meeting; and the result may be known long before October 1st following, when the excise year ends.

In Matter of Town of Livingston, the Appellate Division holds that the words, "Sufficient reason being shown therefor," refer to the reason why the submission was improper; that is, when it is shown that the four propositions were not properly submitted for some reason, then the required sufficient reason is shown. In its decision in Town of Livingston, the Appellate Division has reviewed the prior decisions, many of which were conflicting. The construction adopted is not only in harmony with the wording of the statute, but is one which sets at rest many disputed matters, and, if followed, will bring consistency into the decisions of the courts and inform our citizens of some rules that will be applied in such cases.

The petitioner has presented many alleged irregularities: That a minor was allowed to vote; that challenges for two men were left with the inspectors, and that, when one of these men was challenged, he was not asked the questions under oath provided for by the statute; that ballots with erasures upon them were counted, and that ballots marked both "Yes" and "No" as to one particular question were counted; that a voter was allowed assistance without taking the required oath. It does not appear that any protest or objection was made at the time that any of these alleged irregularities occurred, or that the attention of the board of inspectors was called thereto.

[4] If ballots having erasures thereon were cast, it was the duty of the watchers and the inspectors to protest these ballots when being counted. One purpose of the watcher is to see that the vote is correctly counted, and that ballots which are marked or claimed to be illegal should be protested. If such irregularities caused an improper submission, there would be a demand, after every close election, for a resubmission, and it would have to be granted. Such irregularities could have been and presumably would have been corrected, if attention had been called to them at the time. The irregularities which render the submission improper must go to the substance, and, generally, at least, must be disregard of a mandatory statute which controls the preparation for the vote or the record of its result. Also, where the disregard of a mandatory statute can be corrected, or the statute now complied with, a mandamus should issue requiring the offending officer to perform his duty, rather than an order for resubmission.

There are but two of the defects in the submission which require consideration:

(1) The failure to make and file the original statement of canvass. Election Law (Consol. Laws 1909, c. 17) § 373.

(2) The failure forthwith to seal the ballot box and return it to its proper custodian, to be preserved inviolate. Id. § 374.

The Liquor Tax Law, § 13, provides as follows:

"As soon as the town meeting or election shall be held, a return of the votes cast and counted shall be made as provided by law."

This makes sections 373, 374 of the Election Law a part of the Liquor Tax Law. Section 373 provides:

"Upon the completion of the canvass, the board of inspectors of the election shall make and sign an original statement thereof, * * * on the first page or pages of which there shall be a return of the ballots voted, following which there shall be a separate return for each office of the votes cast for each candidate therefor in the form prescribed for such returns and statement in section 378 of this chapter. At the end of the last detailed statement of votes cast for candidates, they shall add a statement of the number of general ballots protested and marked for identification. The inspectors shall also make as a part of their original statement a return of the number of void ballots rejected by them, and on such ballots no vote shall be counted for any candidate. Each ballot declared void by the inspectors shall be indorsed upon the back thereof with the specific reason for such rejection. Such void ballots shall, together with the ballots which were protested as being marked for identification, be secured in a separate sealed package, which shall be endorsed on the outside thereof with the names of the inspectors, the designation of the election district and the number and kinds of ballots contained therein. Such package shall be filed by the chairman of the board of inspectors with the original statement of the canvass. If ballots are voted on any constitutional amendment, proposition or question, a similar return of the ballots and votes cast thereon shall be made and included as a part of such original statement. * * * At the end of each return contained in such original statement of the canvass, and also at the bottom of each sheet, or half sheet thereof, the inspectors shall make and sign a certificate that the foregoing statement is correct. If any inspector, poll clerk or ballot clerk shall refuse to sign any return required of him by this chapter, he must state the grounds upon which such refusal is based upon such return over his signature."

Section 374 provides for the immediate sealing of the ballot box, after the counted ballots have been returned, and its preservation inviolate.

To the end that the board of canvassers may have full and accurate information on which to perform its duty, or that a recount or recanvass may be had, it is readily understood how essential obedience to these provisions is. They are mandatory. In this case no such original statement was made and no substantial substitute therefor. The report of the town board as a board of canvassers, which is contained in the papers presented by the interveners, is not the original certificate required by this provision of the statute; nor is the paper or statement signed by the poll clerks. In 10 American and English Encyclopedia of Law (2d Ed.) p. 739, it is said:

"In some cases it has been held that returns should not be rejected merely for want of the signatures or certificate required by law. The weight of authority, however, is to the effect that the law, requiring returns to be certified to or signed or attested by the officers making them, is mandatory, and that a return not thus authenticated cannot be received in a contest or by the canvassers."

And in 15 Cyc. p. 376, it is said:

"The return should always be authenticated by the official certificate and signatures of the clerk, inspectors, or judges of election; and, according to the weight of authority, it is essential to the validity of the return that it

bear the signatures of a majority at least of the officers who conducted the election."

Because of this misconduct of the inspectors, the questions were not properly submitted, and a resubmission must be ordered, unless the wrong can be cured by mandamus.

The ballots cannot be recounted. The box has not been kept sealed and inviolate. Since the inspectors, or some of them, counted the ballots and returned them to the box, the box has been opened and the ballots handled and counted by the town board, men who had no authority or right to do so. The inspectors cannot secure information on which to make their statement by a recount. Can the inspectors, then, make the required original statement? The affidavits disclose the information, and lack of information, of the inspectors. The result of the vote is uncertain. The first count of the vote made by the chairman showed a majority of six in favor of hotel license; the next count by Maynard, one of the inspectors, showed but one majority in favor of hotel license, his count showing 156 for and 155 against. These two counts differed in result, but another count was not made, though demanded. The next morning the town board, acting as a board of canvassers, but without any authority of law, counted the ballots and found 152 for and 150 against. Thus we have three counts and three different results. Chairman Smith gives us no information as to the whole number of ballots cast, the number of blank ballots, the number of ballots considered by him void, or the number of ballots which contained erasures or were marked for identification, if any. Inspector Maynard gives us no more information. Assuming, as we must, that both Smith and Maynard were honest in making the counts, the conclusion is that Mr. Maynard refused to count certain ballots which were counted by Mr. Smith. The town board, acting as a board of canvassers, counted the ballots in the morning, and they found 152 votes for and 150 against hotel license; that is, by their count they found 3 less votes for hotel license than Maynard had found the night before against hotel license. The board's statement shows the number of votes for and against on each question only—nothing more. So that, either ballots had been removed during the night, or the board threw out ballots counted by Maynard.

The result is most uncertain and unsatisfactory. The inspectors evidently have not the information on which to make the required statement. There were certainly more ballots cast than were counted by the town board or by Maynard, but we do not know why all the ballots were not counted. While a substantial compliance with section 373 is sufficient, the original statement must contain sufficient information upon which the board of canvassers can perform their duties. It is not enough to furnish the number of votes for and against, without giving information as to the whole number of ballots cast, and the number not counted because void, or protested or blank. Without this much information, at least, the canvassers cannot act. Memory is uncertain and faulty. A considerable time has elapsed since the election. The affidavits show much uncertainty, on the part of those present and who counted the ballots, as to what

they saw and did. To order the inspectors now to prepare and return the original statement could avail nothing. The result would still be most uncertain. Generally we could best learn whether or not the inspectors could make the original statement by ordering them to make it, but in this case their affidavits show they have not the required information.

It is held that the vote of the town and not the statement of the result determines the right to sell liquors (People ex rel. Henness v. Douglass, 143 App. Div. 750, 128 N. Y. Supp. 547), and the court suggests that a proper way to determine the result is to open the ballot box. This plainly cannot be done in this case. So that the only way to determine the wish of the voters is to resubmit the question.

[5] It is stated that the clerk did not furnish the proper blanks for a canvass and a proper tally sheet. This does not excuse the inspectors from making the original statement.

[6] The interveners take the preliminary objection that it does not here appear that the required petition for the special town meeting and for the submission has been made. This objection is overruled. The petition with the order of the court must be filed with the town clerk, not presented to the court in the proceedings to procure the order.

In my judgment, the failure of the inspectors to make the original statement and to seal and deposit the ballot box with its custodian, as required by statute, was a disregard of a mandatory statute. Under the authorities above cited, this rendered the submission improper; and, under the facts of this case, an order requiring a resubmission at a special town meeting should issue.

Ordered accordingly.