CINCINNATI BELOTE, APPELLANT, vs. O'BRIAN'S ADMINISTRATOR, APPELLEE.

1. A bill of particulars attached to the declaration in an action of assumpsit, although sworn to, is in no sense evidence in the cause, nor in any event can it be referred to, to supply a deficiency in the proof on the part of the plaintiff. Its sole object is to inform the defendant of the nature and character of the cause of action, and for what particular items it is brought.

2. The effect of the exceptions to the general rule, as provided in Chapter 1983, Laws 1874, McC. Dig., 518, §24, is not to render a witness incompetent generally, but only incompetent to testify upon certain specified subjects, namely: "transactions and communications," had with the deceased in his life time. Any party may testify to any fact pertinent to the issue, if it does not come within the exceptions as provided in and by the statute.

Appeal from the Circuit Court for Duval county.

The case was tried before Mr. T. A. McDonell, as Referee. The facts of the case are stated in the opinion.

*Rhydon M. Call* for Appellant.

The court erred in striking out the testimony of the plaintiff, Cincinnati Belote.

The statute under which this motion was made reads thus, "That no party to such action or proceeding * * * shall be examined as a witness in regard to any transaction or communication between such witness and the person at the time of such examination deceased, &c."

The defendant claims that the testimony of the plaintiff was such testimony in regard to a transaction or communication between herself and the deceased as is contemplated by Chapter 1983 of the laws of Florida. The inquiry then is, does this testimony fall within the meaning and intent of this statute?

Mrs. Belote testified that she made medicine similar to that furnished O'Brian, and was familiar with the ingredients and costs of the same, and then testified to the value. The making and delivery of the medicine by Mrs. Belote, and the receipt and promise to pay for the same by O'Brian, having been established previously by the testimony of a third party, to wit: Charles Belote.

In construing this statute, it is necessary for us to arrive at a correct understanding of the intention and purpose of the Legislature in its passage. In arriving at this we are greatly assisted by the decision of this court in the case of Robinson vs. Dibble's Adm'r., 17 Fla., 457. In that case in speaking of this statute, this court says: "The purpose of the statute was to enlarge, not to restrict, the competency of the parties as witnesses. It made parties witnesses-in-chief in the cause, except as to certain matters therein mentioned." These exceptions being the transactions and communications between the parties and the decedent. The court continues: "The suppletory oath of the party to the effect mentioned above we do not think makes him a witness in regard to a transaction between himself and the deceased person within the meaning of the statute referred to. Its effect is to prohibit his being a witness-in-chief in

the cause as to such transaction, &c." We would not be allowed to establish by the party in interest that she had made the medicine, and had done other things for which compensation is sought, at the request of O'Brian, and that he had received them and promised to pay for the same. This would clearly be contrary to the statute and doing the very thing intended to be prevented by the statute. The intention of the statute, it is apparent, is to protect estates of deceased persons from fraudulent claims and prevent perjury. The claims would be sustained by the oath of the plaintiff alone, and detailing some conversation, or telling of some transaction between the decedent and the plaintiff, occurring in some obscure place or at some time when no one was present except the decedent, and the witness. This statute was certainly not intended to exclude altogether a party in interest from being a witness in the case, but only to prevent the party in interest from being a witness-in-chief to transactions and communications between the decedent and the party. After the chief facts of the case have been established, the fact of the sale and delivery and the promise to pay on the part of the deceased person, there remains only to prove the value of the goods so sold or of the work so done. How are we to prove this? There are two modes. If there is any one familiar with the goods sold or the work done and knows the value of the same, we may prove it by such person. If it is ordinary goods, &c., by a dealer in goods of that character or one familiar with work of the kind done. But in this case the only one knowing the ingredients of the medicines furnished O'Brian is the plaintiff. She being the only one who knows the ingredients is the only one who can testify as to the value of the medicines furnished. If she was a merchant and kept her books herself, notwithstanding that O'Brian was dead, she could be introduced as a witness,

identity her books, testify that the entries were made at the
time they purported to have been made, and thus make
her books evidence.   It would be a hardship, indeed, if,
after full proof had been made of the manufacture, sale and
delivery of the goods and a receipt and promise to pay, be-
cause the value of the article was known only to the plain-
tiff, and she did not keep a set of books, that she should be
left out entirely and not allowed to prove the value of the
articles so proved to have been delivered and for the work
so proved to have been done and performed.   And this was
clearly not the intention of the Legislature in the passage
of this act.   Their intention, it is plainly apparent, is to
prevent the party being a witness-in-chief to the transaction
or communication, and thus close the door to fraud.   But
in cases where the only fact, such as the value, remains to
be proven, I submit that in such cases the party in interest
testifying would occupy the same position as the merchant
making his suppletory oath in a case where the opposite
party was deceased.   There was considerable stress laid on
the fact that the plaintiff's testimony was necessary to the
case in order to have a judgment rendered against the de-
fendant; and being vitally important, she testified of a
transaction between herself and the decedent.   If the Legis-
lature had intended to exclude a party altogether from be-
ing a witness in a case where the opposite party was de-
ceased the words of the statute would have been entirely
different.   And if the testimony was not material it would
be subject to objection on another ground.   It would seem
that this court meets any such objection to the testimony
by their decision in the case of Robinson vs. Dibble's Ad-
ministrator referred to above, when they declare the party
capable of taking the suppletory oath.

Again in the case under consideration, the plaintiff said
not one word of any transaction or communication between

9

herself and the deceased, John M. O'Brian. She being present and hearing the testimony of Charles Belote, and being familiar with the ingredients composing the medicines, &c., testified in the case as any one could who hearing the testimony of Charles Belote, and from his testimony knowing the medicine, was able to tell of what ingredients it was composed and of their value. Also of the value of the sewing of an ordinary man. Taking this view the plaintiff did not testify of or concerning any transaction or communication between herself and the deceased whatever, but simply of the value of certain articles proven to have been delivered, with which she was familiar. In this view of the matter I submit that the testimony of the plaintiff should not have been stricken out and that the court committed error in striking the same.

In regard to the other errors assigned they all depend upon the decision of the second assignment, and it would be needlessly consuming the time of this court to consider them.

*James L. Harn* for Appellee.

The testimony of the plaintiff, together with that of her son, Charles Belote, was the only testimony introduced in her behalf at the trial. The testimony of Charles Belote was not conclusive or tended in any way to establish a single allegation contained in the declaration, and unassisted by that of the plaintiff would have been wholly insufficient to support a judgment in her favor. He expressly says that he does not know what the goods alleged to have been furnished to the defendant were worth, nor was he able to testify as to the value of plaintiff's services alleged to have been performed. This of itself would unquestionably show the materiality of the plaintiff's testimony, which, if al-

lowed and properly in, might have proved disastrous to the cause of the defendant. The law as above partially set forth is unequivocal, and in terms emphatically declares that no party to the action or person in interest shall be admitted to testify as to any transaction or communication between such witness and the deceased. Now I submit that an examination of the record in this cause shows that the testimony of the plaintiff was directly in support of a transaction or understanding which may or may not have been had in the life time of O'Brian. Counsel for appellant does not contend that the motion to strike out was an improper one, or that the court would have erred in entertaining it, provided it had been made in what he conceived to be the proper step of the proceedings. He simply maintains that because the evidence was admitted without objection from opposite counsel, he forfeited the right to avail himself of it afterwards, irrespective of the character of the evidence. The law says that such party cannot testify in a cause; this being so, then what purports to be the testimony of the plaintiff could not properly have been considered by the referee even in the absence of the motion to strike out.

In support of this proposition I cite the case of Mattair *et al.* vs. Card, reported in 18 Fla., on page 768, in which this doctrine is firmly supported. Chief-Justice Randall, delivering the opinion, says: " It is proper to remark, however, that all the testimony of the defendant as to their transactions or conversations with Alexander before, at the time and after the conveyance and the note and mortgage were executed, is illegal and improper to be considered as evidence of such matters. They are prohibited by law from giving such testimony, Alexander being dead, unless the administrator has testified in relation thereto. All such testimony should be struck out by the court."

From this it would seem to be the duty of the court, *ex-officio*, and in the absence of motion from counsel, to expunge from the record and from their consideration all this character of testimony because it is clear from this ruling that the same is not evidence and can carry with it no weight. In further support of the same doctrine I cite the case of Lycurgus G. Stewart, Appellant, vs. Sarah A. Stewart, Appellee, deceased, in January Term, 1883, in which the Chief-Justice, delivering the opinion, lays down the following dictum : " Neither a party to a suit nor his assignee or grantor should he allowed to testify to transactions or communications between such persons and a person deceased, as against an heir at law, legatee or devisee of the deceased, except when the last named persons have testified in respect to the same transaction or communication, and a court of equity will disregard testimony given in violation of this statutory rule, though no objection was made to its introduction." I also cite the case of Tunno vs. Robert, reported in 16 Fla., 750.

The same doctrine is upheld in the case of John S. Sammis, Appellant, vs. L'Engle and Hartridge, Sanderson's Administrators *et al.*, Respondents, decided at the January Term for 1883.

The second ground of error assigned by the counsel for, appellant is, that the court erred in striking out said evidence. It being settled that testimony of parties in the category of this plaintiff cannot be treated as evidence, and not susceptible of consideration by the court, then this second ground must necessarily fall for want of support.

Mr. Justice VanValkenburgh delivered the opinion of the court.

This was an action brought by Cincinnati Belote in the

Circuit Court of Duval county against James S. Bell, administrator of the estate of John M. O'Brian, for work done and material for the same furnished to the said O'Brian in his lifetime, to the amount of six hundred and six dollars. Attached to the declaration was a bill of particulars in the shape of an account against the deceased, in the following form:

ESTATE OF JOHN M. O'BRIAN, TO J. S. BELL, ADMINISTRATOR.

*To Mrs. C. Belote :*                                  DR.

| | |
|---|---:|
| 1879. To three bottles of medicine for cough prepared by me each week from June 1st, 1879, to September 12, 1881, (118 weeks) at $1.00 per bottle | $354.00 |
| To one bottle of bitters each week from June 1st, 1879, to September 12, 1881, (118 weeks) at 50 cents per bottle | 59.00 |
| To one plaster for chest each week from June 1st, 1879, to September 12, 1881, (118 weeks) at 50 cents per plaster | 59.00 |
| To one bottle of liniment each week from June 1st, 1879, to September 12, 1881, (118 weeks) at 50 cents per bottle | 59.00 |
| To making and repairing garments during the time, from June 1st, 1879, to September 12th, 1881 | 25.00 |
| Total | $606.00 |

This bill of particulars has attached to it the affidavit of C. Belote made on the 12th day of July, 1882, to the effect that "the above account against the estate of John M. O'Brian is due and remains unpaid; that the services charged for in this account were rendered to the deceased at his request, and that the medicines prepared for him and charged against his estate were delivered to and used by the deceased during each and every week between the time from June 1st, 1879, to September 12th, 1881."

The defendant plead that he never was indebted as alleged in the declaration. Issue was duly joined, and the cause was referred to T. A. McDonell, Esq., to hear and determine.

On the 23d December, 1882, the cause came on for trial

before the referee, and the plaintiff was introduced in her own behalf and testified as follows:

"I make medicine for my family similar to that furnished to O'Brian in his lifetime. The cough medicine that I make is of two kinds. One kind costs eighty-three cents per bottle, the other $1 per bottle. The cost of the ingredients of the liniment was fifty cents per bottle; the cost of the ingredients of the strengthening plaster was fifty cents. The medicines, the cost of which is above stated, are similar to those furnished to O'Brian in his lifetime, and cost the same and are composed of the same ingredients. The sewing for an ordinary man I should charge for fifteen or twenty dollars a year, that is making and repairing garments."

On her cross-examination, she said:

"In one bottle of the cough mixture the following are the ingredients: Icelen moss, cost 5; licorice, 10; gum arabic, 10; anise seed, 10; honey, 25; rum, 13; paregoric, 10. The other kind of cough medicine, the ingredients are as follows: Rum, 50; honey, 25; balm of gilead buds, 10; paregoric, 10; rock candy, 5. The liniment is composed of the following ingredients: Sweet oil, 15; camphor 10; turpentine, 5; laudanum, 10; hartshorn, 10. The strengthening plaster is composed of roots dug by myself from the ground."

On the 25th day of January, and after the foregoing evidence had been taken, the defendant, by his attorney, moved the court to strike out such testimony of the plaintiff, for the reason that it was improperly admitted, and for the reason that it was incompetent and illegal.

The referee granted the motion, and struck out the testimony. The attorney for the plaintiff duly excepted to such ruling of the referee.

Charles Belote, a son of the plaintiff, was then sworn

and testified substantially as follows: I know the plaintiff and knew O'Brian in his lifetime. Defendant was always complaining of a cough; I know the plaintiff made cough medicine, liniment and strengthening plasters for him. She commenced to make these medicines for him in June, 1879, and continued to make them until the time of his death in 1881. Each week three bottles of cough medicine and one strengthening plaster was furnished to John M. O'Brian, sometimes one bottle and sometimes two bottles of liniment each week. During same time plaintiff did the sewing and mending for O'Brian; O'Brian usually came after the medicine, and when he did not come, I carried it to him; I also carried him garments made and repaired by the plaintiff; these things were not paid for by the deceased before his death, nor since by this administrator; the Sunday before he died he said to me, that the medicines were better than any doctor's, and she should be well paid for them; I lived in the house with my mother during the time; she did not render any bill to O'Brian in his lifetime; she bought the ingredients at the drug store; don't know what she charged for the medicines or the plasters; I carried the medicine to O'Brian about as often as he came for it; the medicines were always furnished in bottles holding about a pint, always full.

Robert Grant, a witness for defendant, testified that he knew O'Brian for two years before his death; in the latter part of sickness he was with him constantly; he was in the house with him all the time, and the only medicine he took was tar water, and the application of the pitch plaster; for more than six months before his death the witness began getting pitch plasters for him; witness never knew of plaintiff furnishing medicine and never saw Charles Belote come to the house; witness was there, about daily for six months before O'Brian's death, and if

Charles Belote had brought medicine he would have been likely to have seen him; witness usually gave O'Brian his medicine, and if he had been taking any other kind he certainly would have known it.

Mrs. E. A. Rhame testified that she knew O'Brian since 1879; he came to Florida for his health, troubled with his lungs; he had an aversion to doctors, and wanted to depend upon the climate; the last year of his life she saw him frequently, and for three months before his death saw him two, three and four times a week; two or three weeks before his death, while taking dinner, his cough troubled him; she asked why he did not take some syrup, or something for his cough; he answered it would do him no good; Mr. Arnold furnished him with the tar water, which he took; never heard him speak about Mrs. Belote's furnishing medicine.

Mrs. G. W. Arnold testified: I knew O'Brian since January, 1879; he had lung trouble and came for his health; he boarded with me about two months; he then left and went to his own house about a quarter of a mile from mine; I then saw him frequently, he came in and out quite often; he never had a doctor to attend him; had no faith in them, and preferred me to fix and prepare little simples for him; he told me that Mrs. Belote had offered to furnish him with medicines which would do him good, but he was satisfied all she wanted was his money, and had no faith in her medicine, and did not want any of it; he did not take anything for his lungs, as he told me, and not until the third year did he begin any treatment for his lungs, by taking tar water I furnished him, and using pitch plasters I also furnished him; I know that during six months and longer before his death he took nothing but tar water and used the pitch plasters; he told me he was afraid to take the medicines from Mrs. Belote, and was very suspicious of them

because she was in with the Hayes who were his enemies, and he was afraid she would poison him. Before Judge Baker, in an examination, I heard the plaintiff say " long for a spell he paid me for the medicines I furnished him, but after we were engaged to be married, which was in April, I made no charge; at the time of his death there were no empty bottles about in which any kind of medicine had been furnished."

The referee found for the defendant and the plaintiff made a motion for a new trial which was denied, and then brought his appeal to this court.

The errors assigned are as follows:

1. In allowing the motion to strike out the testimony of Cincinnati Belote, said motion coming after said testimony was received without objection.

2. In striking out said testimony.

3. The verdict was contrary to the evidence.

4. The verdict was contrary to the law.

5. In denying the motion for a new trial.

Section 1 of Chapter 1983, Laws, reads as follows: " No person offered as a witness in any court, or before any officer acting judicially, shall be excluded by reason of his interest in the event of the action or proceeding, or because he is a party thereto ; *Provided, however,* that no party to such action or proceeding, nor any person interested in the event thereof, nor any person from, through, or under whom such party or interested person derives any interest or title by assignment or otherwise; shall be examined as a witness in regard to any transaction or communication between such witnesses and the person at the time of such examination deceased, insane, or lunatic against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee, or survivor of such deceased person," &c.

This action was brought by Mrs. Belote against the ad-

ministrator of O'Brian. Attached to the declaration was a bill of the particulars of her demand amounting to $606 for medicine furnished and labor done. This bill of particulars is in no sense evidence, nor in any event can it be referred to, to supply any deficiency in the proof on the part of the plaintiff. Its only object is to inform the defendant of the nature and character of the cause of action. The son of the plaintiff was a witness upon the part of the plaintiff. He proves the delivery of medicine, liniment and strengthening plasters to O'Brian, made and furnished by his mother from June 1879, to his death in 1881. He also proves that the plaintiff did the sewing and mending for the deceased during the same time. He says, each week three bottles of cough medicine and one strengthening plaster, sometimes one bottle and sometimes two bottles of liniment each week, was furnished to the deceased O'Brian. That these things were not paid for by O'Brian during his life, nor by the administrator since his death ; that the deceased said before he died that his mother should be well paid for them. The value of the medicine, or the work in sewing for the deceased were not proved by this witness. To prove such value, and in order to enable her to recover a judgment, the plaintiff's evidence seemed to be necessary. Without it, the amount in which the estate of O'Brian was indebted to her could not be arrived at by the referee. She testifies in her own behalf that she makes medicine for her own family, similar to that furnished to O'Brian in his lifetime, and then testifies as to the cost of the medicines, itemizing the expense of each ingredient of which they were compounded. She also testifies as to the value of services per year, in making and repairing garments for " an ordinary man." These medicines and the making and repairing of such garments, is the cause of action specifically set out in her bill of particulars. There is no other evidence

of the value of the services, or the worth of the medicines. Upon motion, this evidence of plaintiff was stricken out by the referee, as being in conflict with the law above cited. Chapter 1983, Laws 1874.

We cannot see that it was so in conflict with that law. She has not testified "in regard to any transaction or communication" between such witness and the deceased O'Brian. Her evidence was only to the value of certain medicines, which she made for her own family, the like of which was furnished (as proved by her son) to O'Brian in his lifetime, and what it was worth to make and repair garments per year.. The word "transaction" means "the doing or performing any business, the management of an affair, the adjustment of a dispute between parties by mutual agreement." Certainly, she testified to no such thing, when she only gave the value of certain medicines, compounded of drugs, and the worth of services performed in making and mending garments. There was no "communication" between her and the deceased referred to in her evidence. The value of the articles furnished and the labor performed were wholly independent of any personal transactions or communications between the witness and the deceased person. The effect of the law, or rather the exception to the general rule as prescribed thereby, is not to render a witness incompetent generally, but only incompetent to testify upon certain specific subjects, namely : "transactions and communications" had with the deceased.

Any party may testify to any fact pertinent to the issue, if. it does not come within the exception as provided in the statute. This point has been adjudicated and settled in this State. In Robinson vs. Dibble's Admr's, 17 Fla., 457, this court says : "The purpose of the statute was to enlarge, not to restrict the competency of parties as witnesses. It made parties witnesses-in-chief in the causes except as

to certain matters therein mentioned." See also Raulerson vs. Rockner's Adm'r, 17 Fla., 809 ; Sanderson's Adm'rs vs. Sanderson, Ib., 820.

We think the referee erred in striking out the evidence of Mrs. Belote. As to the question, whether with her evidence, taken in connection with that of her son, and with that of the witnesses for the defendant she would be entitled to a judgment, we have nothing to say. Her evidence should have been considered by the referee, and he was the proper judge of the facts, as well as the credibility of the witnesses.

In the view we have taken of this case it is not necessary to examine the other alleged errors.

The judgment is reversed and a new trial ordered.