MILDRED P. SHOEMAKER AND WILLIAM A. SHOEMAKER, HER HUSBAND, *Appellants*, V. ARTHUR M. POWERS, WILLIAM HARRIS POWERS, A MINOR, VIOLET H. SHEPHERD AND LOUIS A. SHEPHERD, HER HUSBAND, AND IRMA M. POWERS, *Appellees*.

Opinion Filed June 24, 1919.

1. The purpose of the statute enacted in 1854, adopted from the Civil Code of New York, and brought forward as Section 1505 General Statutes of Florida, was to enlarge, not to restrict, the competency ,of parties as witnesses.

2. The expression "interest in the event," as used in the proviso to this statute, was never intended to enlarged the class to be excluded under it beyond that which the common law excluded in using the same language. Under the stringent rules of the common law *all* persons who were interested in the event of a suit were disqualified from testifying therein, whether their antagonists in interest were living or dead. The purpose of this statute was. to remove this common-law disability arising from *interest in the event* of litigation, except in cases where one of the parties to any "transaction or communication" was, at the time of the examination, dead or insane. In the latter cases the disabilities arising from *interest in the event* that were imposed by the common law are, by this statute, retained. But in such cases the statute disqualifies *those only* who were disqualified by the general rule of the common law. Any exception from the disqualification that was recognized by the rules of common law, forms a like exception to the cases intended to be excluded by the proviso to this statute. If the witness was competent by the common law, he is competent also under the proviso to this statute, and *vice versa*.

3. The true test of the interest of a witness under the proviso to this statute is whether he will either gain or lose by the direct legal 'operation and effect of the judgment, or whether the

record in the case will be legal evidence, for or against him, in some other action. It must be a present, certain and vested interest, and not an interest uncertain, remote or contingent.

An Appeal from the Circuit Court for Duval County; Daniel A. Simmons, Judge.

Decree affirmed.

ELLIS AND WEST, J. J., dissent.

*Baker & Baker,* for Appellants;

*John E.* and *Julian Hartridge,* for Appellees.

BROWNE, C. J.—This is an appeal from the decree of the chancellor in a suit for partition brought in Duval County by Mildred P. Shoemaker and William A. Shoemaker, her husband, against Arthur M. Powers, Irma M. Powers, Violet H. Shepherd and Louis A. Shepherd, her husband, William Harris Powers and L. Memminger.

It is not necessary to set out in this opinion the genealogy of all the parties as shown by the bill, as the issue involved may be presented more tersely.

As early as 1902 Margaret F. Powers owned the lands sought to be partitioned, and in February, 1911, she made a will which on her death was duly probated whereby she devised the lands involved, to her children, Mildred P. Shoemaker, Arthur M. Powers and Irma M. Powers, in equal proportions. It is claimed that on February 21st, 1902, she executed a deed to these lands to L. Memminger, who simultaneously executed a deed conveying the identical property to Stephen Powers, the husband of Margaret F. Powers.

Mildred P. Shoemaker, Arthur M. Powers and Irma M. Powers claim title through the will of Margaret F. Powers.

William Harris Powers, one of the defendants, claims an interest in the property as an heir of his grandfather, Stephen Powers, who, it is claimed, derived title by the deed from Margaret F. Powers to Memminger, and by him conveyed to Stephen Powers in 1902.

The defendants introduced in evidence a certified copy of a deed from the defendant, L. Memminger, purporting to convey the title to the lands involved in this litigation to Stephen Powers, and sought to establish by parol testimony the fact that immediately preceding its execution a conveyance of the same property was executed by Margaret F. Powers and her husband, Stephen Powers, to Memminger.

If the title to the lands was in Margaret F. Powers at the time of her death, Mildred P. Shoemaker, Arthur M. Powers and Irma Powers derived title thereto from the will, and William Harris Powers, son of William Herbert Powers, who was the son of Stephen Powers, both deceased, was excluded from any share or interest in the lands and from any participation in a partition thereof. If, however, the title thereto passed from Margaret F. Powers to Stephen Powers, her husband, by a deed from them to Memminger, and simultaneously by deed from Memminger to Stephen Powers, William Harris Powers would share in the partition of the lands, because it is not denied that both his father, William Herbert Powers, and his grandfather, Stephen Powers, died intestate.

The proper disposition of the cause, therefore, depends on the question of whether Margaret F. Powers and Stephen Powers in their lifetime made a valid deed to the land in question to L. Memminger.

To establish this the deposition of Memminger, then residing in Madras, India, was taken. He testified, in part, as follows: "The purpose of making and delivering the deed to me as explained to me by Mr. Powers and the others present at the time was to enable Mrs. Powers to convey property at the nominal consideration of $1.00 to me, which property I was to convey immediately thereafter to Mr. Stephen Powers also for the nominal consideration of $1.00 simply to place title back where it originally rested, Mrs. Powers for the purpose of vesting the title in her husband, Stephen Powers, joined with her husband and executed and delivered a deed of the property to me and on the same date in order to carry out the purpose of vesting the title in Stephen Powers I executed a deed to Stephen Powers. The request that I should take part in this transaction was made of me by men who were all considerably my seniors occupying as it seemed to me positions of responsibility and I therefore assumed that I was acting jointly with them in a pro forma matter having been asked to do so because I was in the same building and happened to be in my room at the time. I was then quite young, twenty-two years old, but feel sure that with my habitual carefulness in such matters I was given assurances at the time by these older men which caused me to accede to their request. I had no interest in the matter whatever. I do not remember explicitly the property conveyed by the deed, but to the best of my knowledge and belief the property conveyed was located in the City of Jacksonville, County of Duval, State of Florida.

\*   \*   \*   The two transactions were almost simultaneous and occurred at the same place. The conveyance of property by me to Stephen Powers immediately succeeded my receipt of the deed from Margaret and Stephen Powers. There could have been only a few moments' interval between the two transactions. I remember that we were all in the reporters' room (the room where I had my desk) at the time. The sole purpose of signing the deed was to place the title of the property in Stephen Powers as the original owner of the property."

Objections were made to these depositions upon the ground that the defendants claim title through this witness and that the testimony offered relates to a transaction between him and a deceased person from whom he derived his title. The objections were overruled by the chancellor at the hearing.

The statute on this subject, Section 1505, General Statutes of Florida, 1906, is as follows: "No person, in any court, or before any officer acting judicially, shall be excluded from testifying as a witness by reason of his interest in the event of the action or proceeding, or because he is a party thereto; provided, however, that no party to such action or proceedings, nor any person interested in the event thereof, nor any person from, through or under whom any such party, or interested person, derives any interest or title, by assignment or otherwise, shall be examined as a witness in regard to any transaction or communication between such witness and a person at the time of such examination deceased, insane or lunatic, against the executor, or administrator, heir-at-law, next of kin, assignee, legatee, devisee or survivor of such deceased person, or the assignee or committee of such insane person or lunatic; but this prohibition shall

not extend to any transaction or communication as to which any such executor, administrator, heir-at-law, next of kin, assignee, legatee, devisee, survivor or committee-man shall be examined on his own behalf, or as to which the testimony of such deceased person or lunatic shall be given in evidence."

"The purpose of this statute was to enlarge, not to restrict, the competency of parties as witnesses." Robinson v. Dibble's Administrator, 17 Fla. 457; Belote v. O'Brian's Administrator, 20 Fla. 126; Adams v. Board of Trustees of Internal Imp. Fund, 37 Fla. 266, 20 South. Rep. 266. What was said in Adams v. Board of Trustees of Internal Imp. Fund, *supra,* so fully disposes of the question raised here, that we quote freely from it, rather than attempting to change or improve upon it. "This legislation seems to have been adopted *totidem verbis* from the State of New York, it having been originally Section 829 of the New York Code of Civil Procedure, but by subsequent revisions of that Code, renumbered as Sections 398 and 399 (10th Revised Edition Voorhees' New York Annotated Code, of 1871). In passing upon this statute this court, in Robinson vs. Dibble's Administrator, 17 Fla. 457, has said that its purpose was to enlarge, not to restrict, the competency of witnesses. Belote vs. O'Brian's Administrator, 20 Fla. 126. In the thoroughly considered opinion of Judge Peckham, construing this statute, in the case of Hisenlord vs. Clum, 126 N. Y. 552, 27 N. E. Rep. 1024, it is said: 'The expression, "interest in the event," as used in our statute, was never intended to enlarge the class to be excluded under it beyond that which the common law excluded in using the same language.' In other words, under the stringent rules of the common law all persons *'interested in the event'* of a suit were excluded from testifying in

such suit whether their antagonists in interest were living or dead. The purpose of this statute was to remove this common law disability arising from *interest in the event* of litigation, except in cases where one of the parties to any 'transaction or communication' was, at the time of the examination, dead or insane. In the latter cases the disabilities arising from *interest in the event* that were imposed by the common law are, by the statute, retained. But in such cases the statute disqualifies *those only* who were disqualified by the general rule of the common law. Any exception from the disqualification that was recognized by the rules of the common law would likewise form an exception to the cases intended to be excluded by the proviso to our statute. Where, then, a witness is objected to under the proviso of this statute as being disqualified because of interest in the event of the suit, the true test of his competency is by a resort to the common law. If he was competent by the common law he is competent under the proviso to this statute, and *vice versa*. Darwin vs. Kreigher, 45 Minn. 64, 47 N. W. Rep. 314; Hanf vs. Northwestern Masonic Aid Ass'n, 76 Wis. 450, 45 N. W. Rep. 315. Under the common law the *interest*, in order to exclude a witness must have been some legal, certain and immediate interest, however minute in the *result* of the cause, or in the *record* as an instrument of evidence. Where actual gain or loss would result, simply and immediately from the verdict and judgment, the witness was deemed incompetent by reason of his interest; as, where he was a party, though but a nominal party, to the suit; or was a party in beneficial interest; or *quasi* a party, from having entered into a rule of court or agreement that another cause, to which he was a party should abide the same result with that in which he proposed to give evi-

deuce. A witness was also incompetent by the common law where the record would, if his party succeeded, be evidence of some matters of fact to entitle him to a legal advantage, or repel a legal liability. In Greenleaf on Evidence, Sec. 390, it is said that *'the true test of the interest* of a witness is, that he will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence, for or against him, in some other action. It must be present, certain and vested interest, and not an interest uncertain, remote, or contingent.' In construing the proviso to the statute under consideration the court of appeals of New York has uniformly applied to test as thus laid down by Mr. Greenleaf. Hobart vs. Hobart, 62 N. Y. 80; Wallace vs. Straus, 113 N. Y. 238, 21 N. E. Rep. 66; Connelly vs. O'Connor, 117 N. Y. 91, 22 N. E. Rep. 753; Eisenlord vs. Clum, 126 N. Y. 552, 27 N. E. Rep. 1024. It is well settled, however, that by the common law agents, carriers, factors and other servants. of this description constituted a class of special exceptions to the general rule that a witness interested in the subject of the suit is not competent to testify on the side of this interest."

Tested by these rules we find that Memminger was not interested in the result of this suit in any degree, and the objections to his testimony were properly overruled.

We have examined the record and fail to find anything that calls for reversal of the decree of the chancellor.

Having found that the deposition of Memminger was properly admitted in evidence, it would serve no useful purpose to extend this opinion by discussing the other questions raised by the appellants.

The decree is affirmed.

TAYLOR AND WHITFIELD, J. J., concur.

ELLIS AND WEST, J. J., dissent.

WEST, J., dissenting.—This opinion was prepared as the opinion of the court, but upon further consideration of the case a different conclusion was reached by a majority of the court, whereupon an opinion was prepared by another member of the court.

The bill of complaint alleges in substance that the complainant, Mildred P. Shoemaker, and the defendants, Arthur M. Powers and Irma M. Powers, a minor, are seized and possessed of the lands therein described; that they acquired said lands by will from their mother, Margaret F. Powers, a widow, deceased, and own the same as coparceners, a one-third undivided interest by each of them; that said lands are the only real estate owned in common by said parties, and no other person or persons has any interest in or title to them.

It is also alleged that the defendants, William Harris Powers, a minor, and Violet H. Shepherd, formerly Violet H. Powers, the mother of William Harris Powers, claim an interest in said lands through William Herbert Powers, deceased, a son of said Margaret F. Powers, the alleged testatrix, a brother of complainant and the defendants named in the preceding paragraph, the former husband of Violet H. Shepherd and the father of said William Harris Powers; that such claim is asserted under a purported deed of conveyance for the lands described from the defendant Memminger to Stephen Powers, deceased, who was the husband of the testatrix and the father of

the complainant, Mildred P. Shoemaker, the defendants, Arthur M. Powers and Irma M. Powers, and of said William Herbert Powers, deceased; that said deed was recorded in the current public records of Duval County, Florida, and contains a recital that the lands therein described had been theretofore conveyed to said defendant Memminger by Margaret F. Powers, the said testatrix; that said deed from Memminger to Stephen Powers, deceased, is without any source of title and is made without any foundation on any claim at law or in equity; that the claim so asserted is null and void and of no effect as against the title of complainant, Mildred P. Shoemaker, and defendants, Arthur M. Powers and Irma M. Powers, but that a judicial determination thereof is essential before the interests and proportionate shares of the parties to said suit in such lands may be ascertained.

There is a prayer that the lands described be partitioned among the parties ascertained and found to be entitled thereto, or in case this may not be done without manifest prejudice and injury to the parties interested therein, that they be sold and the proceeds of such sale, after paying the costs and expenses of such suit, divided among such parties according to their respective interests therein; that the deed from the defendant Memminger to Stephen Powers, deceased, be declared to be null and void and of no force and effect to convey the title to said lands; that said deed be cancelled of record and delivered up to the clerk of the court for destruction, and that the defendants, William Harris Powers, Violet H. Shepherd and Louis A. Shepherd, her husband, be enjoined from selling or conveying said lands or exercising any dominion or

ownership therein that may be injurious or prejudicial to those alleged in said bill to be the owners thereof, and for general relief.

The defendant, Arthur M. Powers, answered, admitting the allegations of the bill, and the defendant, Irma M. Powers, by her guardian *ad litem*, answered averring that she was an infant, and submitting her rights and interests to the consideration and protection of the court praying strict proof of the allegations of the bill.

The defendants, William Harris Powers, by his guardian *ad litem*, and Violet H. Shepherd and Louis A. Shepherd, her husband, answered.

In the answer of these defendants it is denied that Margaret F. Powers owned the lands described in the bill of complaint at the time of her death, and averred on the contrary that Stephen Powers, her husband, died seized and possessed of said property.

It is also denied that the complainant, Mildred P. Shoemaker, and the defendants, Arthur M. Powers and Irma M. Powers, are each seized and possessed of an undivided one-third interest in said lands, and that no one save and except said parties has any interest in or title thereto, and it is averred that the defendant, William Harris Powers, has an undivided one-fourth interest in said lands, subject, however, to the dower interest therein of his mother, the defendant, Violet H. Shepherd.

Further answering, these defendants aver that the defendant, William Harris Powers, acquired his one-fourth interest in said lands by inheritance from his father, William Herbert Powers, who died intestate, and who was a son of Stephen Powers, the grantee in the Memminger deed; that said Margaret F. Powers was at one time seized and possessed of said lands, but for the purpose of

vesting the title thereto in her husband, Stephen Powers, she joined with him in making a deed of conveyance therefor to the defendant, Memminger, who on the same day executed and delivered a deed for said lands to the said Stephen Powers, who died intestate, leaving surviving him as his only heirs the complainant, Margaret Shoemaker, the defendants, Arthur M. Powers and Irma M. Powers and William Herbert Powers, deceased.

There is no answer in the record by the defendant, Memminger, and it is assumed that a decree *pro confesso* was entered against him.

After the taking of testimony and report of the Examiner, to whom the case was referred, to take the testimony and report the same to the court, upon a hearing the Chancellor found that the said Stephen Powers was at the time of his death seized in fee simple of the lands described in the bill and decreed that Mildred Shoemaker, Arthur M. Powers and William Harris Powers are each entitled to a one-fourth part of said lands, the one-fourth interest of William Harris Powers being subject to the dower interest of his mother, Violet H. Shepherd, and directed a partition thereof in accordance with their respective interests so found therein, by the three commissioners named in the decree, or if they found that this could not be done without manifest prejudice, that they should so report to the court.

At the hearing a certified copy of the will of Margaret F. Powers was introduced in evidence by complainants, from which it appeared that after directing the payment of her just debts and funeral expenses and making a special bequest to her grandson, William Harris Powers, she bequeathed and devised the remainder of the property of

which she might die seized and possessed, to her children, Mildred P. Shoemaker, Arthur M. Powers and Irma M. Powers, in equal proportions, share and share alike.

The defendants introduced in evidence a certified copy of the deed referred to in the pleadings from the defendant, Memminger, to Stephen Powers, purporting to convey to him the title to the lands involved in this litigation, and sought to establish by certain parol testimony the fact that immediately preceding the execution of this deed another similar conveyance for the same property was executed by Margaret F. Powers and her husband, Stephen Powers, to Memminger, the purpose of such testimony of course being to show that the title was transferred from Margaret F. Powers, who it is conceded then owned the lands, through Memminger to Stephen Powers, her husband.

It is apparent from the foregoing statement that if the title to the lands was in Margaret F. Powers, the mother of Mildred P. Shoemaker, Arthur M. Powers, Irma M. Powers and William Herbert Powers, deceased, at the time of her death, that under her will such title thereupon vested in the three first named children, and that her grandson, the defendant, William Harris Powers, was thereby excluded from any share or interest in said lands and from any participation in a partition and division of it; whereas, if, as contended on behalf of said grandson and his mother, the title thereto was transferred from Margaret F. Powers, the testatrix, to Stephen Powers, her husband, by a deed from them to Memminger and simultaneously therewith a deed from Memminger to said Stephen Powers, the said grandson would share in the

partition of said lands, because it is not denied that both his father, the said William Herbert Powers, and his grand-father, the said Stephen Powers, died intestate.

So that the crux of the whole matter is the single question of fact, namely: Whether Margaret F. Powers and Stephen Powers in their lifetime made a valid deed for the lands involved to Memminger. If so the title, so far as this record discloses, was in Stephen Powers at the time of his death; if not, the title was in Margaret Powers at the time of her death.

Now to prove this fact the deposition of the defendant, Memminger, then residing at Madras, India, as a witness for defendants, was taken. This witness testified among other things that the transaction testified about occurred in the City of Jacksonville on February 21st, 1902; that a deed of conveyance for certain lands, the description of which he does not remember, was made to him by Margaret F. Powers and Stephen Powers, her husband; that at the same time or immediately thereafter he, the witness, made a like deed for the same lands to the said Stephen Powers; that the purpose of this transaction, as explained to him at the time was to transfer the title of Margaret F. Powers to Stephen Powers, her husband.

This testimony was objected to upon the ground that the defendants claim title through this witness and that the testimony offered relates to a transaction between the witness and a deceased person. The objections were overruled by the Chancellor at the hearing.

The statute on this subject is Section 1505, General Statutes of Florida, 1906. This statute is as follows: "No person, in any court, or before any officer acting judicially, shall be excluded from testifying as a witness by rea-

son of his interest in the event of the action or proceed-
ing, or because he is a party thereto; provided, however,
that no party to such action or proceeding, nor any per-
son interested in the event thereof, nor any person from,
through or under whom any such party, or interested per-
son, derives any interest or title, by assignment or other-
wise, shall be examined as a witness in regard to any
transaction or communication between such witness and
a person at the time of such examination deceased, insane
or lunatic, against the executor, or administrator, heir-at-
law, next of kin, assignee, legatee, devisee or survivor of
such deceased person, or the assignee or committee of
such insane person or lunatic; but this prohibition shall
not extend to any transaction or communication as to
which any such executor, administrator, heir-at-law, next
of kin, assignee, legatee, devisee, survivor or committee-
man shall be examined on his own behalf, or as to which
the testimony of such deceased person or lunatic shall be
given in evidence."

This testimony was, in my opinion, incompetent and
inadmissible and there was therefore error in the ruling
of the Chancellor overruling the objection to it.

We have seen that the alleged right of William Harris
Powers, the principal defendant to an inheritance in this
property, is dependent upon the proof of a deed therefor to
Memminger in order that there may be a foundation for
the deed from Memminger to this defendant's ancestor
through whom he asserts his claim. This deed to Mem-
minger is a necessary link in defendant's chain of title,
in the absence of which the title fails. The witness, Mem-
minger, is then a "person from, through or under whom"
the defendants derive their title, if they have any title,
and the "transaction" in which the title passed through

Memminger, and about which he was "examined as a witness" was "between such witness and a person at the time of such examination deceased," and such "transaction" was not one "as to which the testimony of such deceased person" was given in evidence. There is, it would seem, therefore no escape from the conclusion that the inhibition of the statute applies and renders incompetent and inadmissible the testimony of this witness respecting this transaction. Stewart v. Stewart, 19 Fla. 846; Holliday v. McKinne, 22 Fla. 153; Whitney v. Brown, 75 Kan. 678, 90 Pac. Rep. 277; Wilson v. Wilson, 83 Neb. 562, 120 N. W. Rep. 147; Van Wagenen v. Bonnot, 74 N. J. Eq. 843, 70 Atl. Rep. 143; Carey v. Carey, 104 N. C. 171, 10 S. E. Rep. 156; Garvey v. Owens, 37 Hun. (N. Y.) 498; Holcomb v. Holcomb, 95 N. Y. 316; Beck v. Cooke, 57 N. Y. Supp. 653; O'Brien v. Weiler, 140 N. Y. 281, 35 N. E. Rep. 587; 4 Words and Phrases (Second Series), pp. 973 *et seq.*

The reason for the rule prescribed by the proviso to the statute (the provision applicable here) is expressed by the Supreme Court of New York in the case of O'Brien v. Weiler, *supra,* as follows: "The policy of the statute rests upon different grounds from the common-law rule excluding the evidence of interested witnesses. *The examination is prohibited in the special cases mentioned, not simply on account of interest, but mainly upon the ground of the enforced silence of the other interested party to the transaction.* If living, he might give such an account of it as would materially affect the credibility of the surviving actor. It was not deemed fair to permit an interested party to have the benefit of testimony which might appear in a different light, or which might not be given at all, if the examination of the adverse party could be secured. The restriction was not limited to an interested

witness, called in his own behalf, but extends to all cases where it is sought to examine the witness in behalf of a party or person interested in the event, who derives title to the subject-matter of the action by assignment or otherwise from the witness, as against the representatives or assignee of a deceased person." (Italics supplied.)

To hold this evidence admissible is to say in effect that although it is conceded that the witness is clearly within the class which the statute says shall not be "examined" the court will nevertheless permit him to be examined and if it appears from *his testimony* that he is not interested, although it does appear that he is a person "through" whom the title of defendants is derived, his testimony will be admitted, although the lips of the other party to the "transaction" are closed by death and there is no way to disprove the asserted disinterest of the witness.

To rest the rejection or reception of the evidence of a witness who admittedly falls within the very letter of the statute not upon the terms of the statute, but upon the fact of the interest or lack of interest of such witness and then permit this fact to be proved by the witness himself is giving to the statute a construction that in my opinion it will not bear. Such statutes are designed to protect the rights and prevent the plundering of the estates of the dead and the insane and this salutary purpose should not be defeated by the courts by construction even though the application of the rule may occasionally seem to work a hardship as may be said to be the case in this instance.

The case of Adams v. Board of Trustees of Internal Improvement fund, 37 Fla. 266, 20 South. Rep. 266, cited as authority for the conclusion reached in the majority

opinion is different in its facts from this case, and as I understand it the views herein expressed are not out of harmony with the law as stated in that opinion. In that case after the general discussion of the statute in considering the specific question there presented the court said: "Even if the witness, Corley, however, was so interested in the event of this suit as that he would ordinarily be incompetent to testify in response to the interrogatories propounded to him and objected to, yet we think that in the transaction between him and the deceased Adams, by which he turned over to the latter the coupons in dispute, he acted in the capacity of an *agent* for the defendant trustees, who were his principals, *which put him clearly in the class of exceptions to the general rule who are not disqualified."* (Italics supplied). So that, a determination of the question discussed in the portion of that opinion which is quoted in the majority opinion in this case was not essential to a decision of the case and is therefore not binding on the court.

The evidence of the witness, Memminger, being excluded the case of the defendants must stand, if it stand at all, upon the evidence of defendants' witness Biggs. This evidence is also in the form of depositions, the witness at the time of giving his testimony being a resident of the City of Baltimore.

By this witness defendants sought also to establish the existence of the deed to Memminger, the crucial question in the case. He testified that while a resident of Ocala prior to the year 1908, upon an examination in Jacksonville of certain deeds and papers in the possession of Mrs. Bowe, formerly Mrs. Margaret F. Powers, she having after the death of her husband married again, that he saw among other deeds one from Stephen Powers

and his wife to Memminger for certain property in Florida, and one from Memminger for the "identical" property to Stephen Powers;.that the deed to Memminger was properly executed in the presence of witnesses, and was duly acknowledged, but not recorded. This witness also testified that he was informed by Dr. Powers (William Herbert Powers) that the execution of these deeds was for the purpose of "straightening the chain of title" and "to place the title in Stephen Powers."

The testimony of this witness relative to the information received by him from William Herbert Powers by which the purpose of the deeds to and from Memminger was explained to him was clearly hearsay, and the objection to it on this ground should have been sustained.

The final question is, was the testimony of this witness sufficient to establish the existence of the alleged deed to Memminger, its due execution and sufficiency of the substance of its contents to enable the court to determine the character of the instrument, the identity of the property and the quality of the estate conveyed.

The rule in such cases is that the proof of the essential facts must be clear and satisfactory. Stewart v. Stewart, *supra;* Edwards v. Rives, 35 Fla. 89, 17 South. Rep. 416; Fries v. Griffin, 35 Fla. 212, 17 South. Rep. 66; Campbell v. Skinner Mfg. Co., 53 Fla. 632, 43 South. Rep. 874; Cross v. Aby, 55 Fla. 311, 45 South. Rep. 820.

And since the deed, the contents and execution of which is here sought to be proved, is a conveyance of the property of a married woman by her, in order to render such conveyance effectual it was indispensably necessary that its acknowledgment in the manner required by statute also be proved. Section 2462, Gen. Stats. of Florida, 1906; Adams v. Maloy, 70 Fla. 491, 70 South. Rep. 463; Walling

v. Christian & Craft Grocery Co., 41 Fla. 479, 27 South. Rep. 46; Carn v. Haisley, 22 Fla. 317.

The testimony of the witness that the deed to Memminger was "properly executed" and that it was "duly acknowledged" was objected to upon the grounds that it was merely the opinion or conclusion of the witness.

Upon the question of whether or not a conveyance to another by a married woman of lands owned by her is effectual to convey the title of said lands it would seem to me that, in the absence of the conveyance itself, there should be other proof than the statement of one who claims to have seen such conveyance, that it was "properly executed" and "duly acknowledged" before it can be said that the fact of an effectual conveyance has been established.

The word "properly" has been defined as meaning "in a proper manner" (Webster's International Dictionary; In Re Norton, 134 N. Y. Supp. 1030), and the word "duly" as meaning "according to law" (Clements v. State, 51 Fla. 6, 40 South. Rep. 432; 2 Words and Phrases (Second Series) 183, and so when this witness stated that this deed was "properly executed" and "duly acknowledged" it was equivalent to an assertion by him that the deed was "executed in a proper manner" and "acknowledged according to law," conclusions merely dependent upon the existence of certain facts, none of which are given. The question in issue here can not be proved in this way. Edwards v. Rives, *supra;* Cross v. Aby, *supra.*

This evidence should have been excluded and without it there is no competent evidence to support the decree appealed from.

ELLIS, J., concurs in the foregoing opinion.