Action by Myrtle Priestley against I.T. Parker, as administrator with will annexed of the estate of Charles J. Priestley, deceased, for goods bargained and sold and for rent. From a judgment for plaintiff, defendant appeals.
Affirmed in part and reversed in part and remanded with directions.
This appeal is taken from a judgment for the plaintiff in the court below rendered by the Circuit Court in and for Broward County.
Mrs. Myrtle Priestley filed her declaration against the defendant, I.T. Parker, as administrator with the will annexed of the estate of Charles J. Priestley, deceased, the former husband of the plaintiff. The declaration was in three counts, but the third was withdrawn. The suit was filed in February of 1948. The plaintiff and Charles J. Priestley were divorced in October, 1944, and at that time they owned, in an estate by the entireties, the property situated in Dania, Florida, described in the declaration in this case, consisting of a dwelling house and a certain building known as the "Shell Shop."
Count One charged that Charles J. Priestley at the time of his death was indebted to the plaintiff in the total sum of $2735.61, in money payable by the said Charles J. Priestley to the plaintiff for goods bargained and sold by the plaintiff to the said Priestley. *Page 212 
The second count charged that Priestley at the time of his death was indebted to the plaintiff in the total principal sum of $2375 in money payable for rent for the use by plaintiff's permission of messuages and lands of the plaintiff's being an undivided half interest in the dwelling house and Shell Shop in Dania, describing them.
To each of these counts the defendant filed pleas of "Never was indebted as alleged."
Mr. Priestley died on October 15, 1947, letters of administration were issued, and the plaintiff filed in the probate proceedings a proof of claim against her former husband's estate, a copy of which was annexed to the declaration. Objections were filed by the defendant administrator, a copy of which was also attached to the declaration. The proof of claim sets out in detail the items upon which the counts of the declaration are based.
By stipulation of the parties, the case as tried by the Circuit Judge without a jury on the first and second counts and the pleas thereto. Judgment was rendered in favor of the plaintiff, Mrs. Priestley, appellee here, on count 1, for $2,577 of principal and $108 interest, and on count II for $1,640 princpal, and $72 interest; the total amount of the judgment being $4,397 and costs.
The record shows that Myrtle Priestley and Charles J. Priestley were divorced on October 3, 1944, and that at that time they owned in an estate by the entireties real property in Dania, Florida, referred to in the second count of the declaration, on which there was located a dwelling house and a store. Upon the granting of the divorce, the parties became, under the statute, tenants in common of such property, and continued as such until the death of Charles J. Priestly on October 15, 1947. Before they were divorced Mrs. Priestley had conducted a novelty store, known as "The Shell Shop," in said store building on the Dania property, but after the divorce she opened up a similar store in nearby Fort Lauderdale, and moved nearly all of the stock in the Dania store to her new Fort Lauderdale store. On or about January 28, 1945, Mr. Priestley opened up a novelty shop in the store building on the Dania property, formerly used by his then wife, which he continued to operate for some time before his death in October, 1947.
We do not think there is any question about the correctness of the trial court's judgment in favor of the plaintiff on the second count, for rent due by the defendant administrator to Mrs. Priestley for her half interest in the Dania property. Over the defendant's objection, it was shown by the testimony of Mrs. Priestley's attorney that in response to letters written by him to Mr. Priestley in October, 1946, carbon copies of which were introduced in evidence, the parties met in his office and had finally agreed that Mr. Priestley should pay $50 per month for Mrs. Priestley's half interest from then on, and the back rent from the time of the divorce to the time of the agreement, at the same rate, as soon as he was able to do so. This amount was half the rental value which was testified to by a real estate agent as being a reasonable rental. Due credit was given by the court for the payments on rent made by Mr. Priestley in December, 1946, and from January to April, 1947.
The objection to the attorney's testimony, above referred to, was on the ground that it was inadmissible under "the dead man's statute," Section 90.05, Florida Statutes, 1941, F.S.A.; C.G.L. 1927, Sec. 4372.
In the case of Buckmaster v. Kelley, 15 Fla. 180, a case not directly in point, this court held that the defendant could adduce the testimony of a witness who had been the attorney of the plaintiff, except as to such facts as came to his knowledge by means of his confidential relations with his client. Here there was of course no showing that the witness was the attorney of Mr. Priestley in his lifetime, nor that there were any confidential relations between them. Per contra, he was the attorney for the plaintiff, Mrs. Myrtle Priestley, but there was no evidence introduced showing that he was "interested in the event" of the action, or that he was employed *Page 213 
on a "contingent fee" basis. We have held that the test of the interest of a witness, under the proviso to section 90.05, Florida Statutes, 1941, F.S.A., is whether he will either gain or lose by the direct legal operation and effect of the judgment, or whether the record in the case will be legal evidence for or against him in some other action. It must be a present and vested interest, and not one uncertain, remote or contingent. Adams v. Board of Trustees of Internal Imp. Fund, 37 Fla. 266, 20 So. 266; Shoemaker v. Powers, 78 Fla. 20, 82 So. 751; 58 Am. Jur. p. 111.
We have also held that an employee is not such an interested party as would preclude him from testifying concerning the business transactions of his employer. McClure v. Century Estates, 96 Fla. 568, 120 So. 4; Hall v. University Realty Co.,97 Fla. 639, 121 So. 808.
We return now to the first count of the declaration and the questions arising from the defendant administrator's objections to the evidence offered by the plaintiff below to prove such count. This brings us to the most controversial features of this case.
The several statutory forms for the plaintiff's pleadings in actions under the common counts are set forth in section 51.03, Florida Statutes 1941, F.S.A., and the forms for the defendant's pleas thereto are set forth in section 52.17, Fla.Statutes 1941, F.S.A. Plaintiff's first count followed form No. 1 of Sec. 51.03, for goods bargained and sold, and defendant's plea thereto followed form No. 1 of Section 52.17 Florida Statutes 1941, F.S.A., which was that defendant "never was indebted as alleged." Form No. 5 of said section 52.17 is the form for a defendant's plea of payment, which plea was not interposed in this case.
The plea of "never was indebted as alleged" presents the general issue on the common counts. Poppell v. Culpepper, 56 Fla. 515, 47 So. 351. We have held that: "This plea operates as a denial of those matters of fact from which the liability of the defendant arises. Rule 25 of the Common Law Rules. Under this plea any negative but no affirmative defense may be made. Crandall's Florida Common Law Practice, p. 225. Set-off, being an affirmative matter of defense, must be specially pleaded." Givens v. Vaughn-Griffin Packing Co., 146 Fla. 575, 1 So.2d 714, 717. See also Carson's Florida Common Law Pleading, p. 110, Sec. 24, and Davis v. Turner, 118 Fla. 907, 160 So. 376. The trial judge correctly held that payment is likewise an affirmative defense. It must be specially pleaded, and the burden of proof thereunder is upon a defendant pleading it. Lakeside Press Photo Engraving Co. v. Campbell, 39 Fla. 523, 23 So. 878; 100 A.L.R. 271.
The distinctions between general assumpsit on the common counts and special assumpsit founded upon an express contract, are dealt with in Hazen v. Cobb-Vaughan Motor Co., 96 Fla. 151,117 So. 853.
The plaintiff sought to prove count one for goods sold and delivered by offering in evidence, not her own books, but an account book proven to have been kept by Mr. Priestley personally in his lifetime, apparently covering a period from January 28, 1945, to January 5, 1947, together with the testimony of two witnesses. This book was admitted in evidence over defendant's objection, and, by order of the trial court, sent up to this court along with the transcript of record. The entries in the book cover a period of about two years, but the entries upon which the plaintiff relied and which were proven to be in Mr. Priestley's handwriting, appear to have been made from and including February 1, 1945 to September 22, 1945. The amount of the claim filed by Mrs. Priestley in the administration proceedings, itemized as to dates and amounts, but not describing the merchandise, which claim was duly sworn to, was for $2,735.61, being the same amount as that sued for in count one. The amount of the court's judgment for plaintiff on this count was $2,577 principal and $108 interest.
The book kept by the deceased during this period showed seventy-one entries of "Stock from Myrtle," each entry showing *Page 214 
the date and the amount in dollars and cents, amounting in all, as we figure it, to $2,375.09; and there are a number of other items, stating the kind of merchandise received, the date, and the amount, such as "Feb. 9, Exotic Perfumes, $51.33," but not showing from whom received; while some entries gave the name of the seller, the date, and the amount, without stating the kind of merchandise, such as "Stock from Ted, $234.00." Then there are a number of entries for small amounts, naming articles "from backroom," which one of the witnesses, James Bowles (Mrs. Priestley's son, and her employee in 1945), testified belonged to his mother, being goods from her store in Fort Lauderdale which she was storing in the back room of the Dania store, but none of these entries use the words "Stock from Myrtle."
A Mr. Theodore Duranger, of Miami, wholesale and retail dealer in gifts and novelties, who was on very friendly terms with both Mr. and Mrs. Priestley, testified that while on trips in that section he delivered packages of merchandise occasionally from Mrs. Priestley to Mr. Priestley at the latter's Dania store; that along with each package would go a statement of each of the articles therein, showing the cost price, and the total, and that upon delivery Mr. Priestley would add up the figures and write in a small black book, the one introduced in evidence, the total amount of each delivery as shown by the slip. He also testified that all the entries on pages 93 to 96, and pages 99 and 84, the latter being a loose page in the book, were all in Mr. Priestley's handwriting, with which he was thoroughly familiar. He said that the first item involved in the suit on page 93, dated February 1st, "Stock from Myrtle, $223.90," was for merchandise which was in the store when Mr. Priestley took it over, and that the item dated February 3rd, "Stock from Myrtle and Ted (Royce), $100.00," was paid for entirely by Mrs. Priestley, though he, the witness, helped her purchase it in West Palm Beach and he delivered it to Mr. Priestley, whom he referred to as the "old man." That it was at the latter's request that witness went to see Mrs. Priestley and asked her to let "Charles" have some merchandise, which she agreed to do. Witness stated his conclusion, that she let him have it on "open account."
James Bowles testified that he delivered at various times some twenty or thirty boxes of merchandise from his mother's store to Mr. Priestley's store, each accompanied by a slip showing the articles therein and the price, and that Mr. Priestley would enter the totals of each box in his book and put the contents in his stock in his store. That in making these entries Mr. Priestley referred to Mrs. Priestley as "Myrtle." He identified the book offered in evidence as the book in which the entries were made. That all the entries on pages 93, 94, 95, 96, 99 and 84 of the book were in Mr. Priestley's handwriting. These pages were offered in evidence by plaintiff. The trial judge remarked, "You ought to offer the whole book. Are those the only sheets that have reference to `Myrtle.'" To which counsel for plaintiff answered, "Yes. If she has delivered him any more goods, we can't prove it." Later on, witness Bowles testified that his mother kept some stock of her own in the back room of Mr. Priestley's store, mostly shell lamps and shells, which testimony was intended to explain the numerous entries for small amounts, naming the articles, date and the amount, thus: "Aug. 13, Lamp (back room) $2.00." The last entry of "Stock from Myrtle" was dated August 28, 1945, but the entries for articles from "back room" continued until February 15, 1946. The last item appearing on Mrs. Priestley's statement of account is dated September 22, 1945.
As the plaintiff, in her first count, claimed $2,735.61, and the court gave judgment under count one for $2,577, it appears that the court deducted these "back room" entries, and properly so. They were too equivocal as against a decedent. The Court admitted the book entries of "Stock from Myrtle," over defendant's objection, as "admissions against interest."
Counsel for defendant administrator contended that the most that the book could possibly show was the receipt and value of goods; that the book showed no debits or credits at all. *Page 215 
Appellant's counsel say that neither of the witnesses testified that the goods shown by the book entries had not been paid for, but when Mrs. Priestley was asked by her counsel if she had received any pay for any of the merchandise shown by the book entries, counsel for defendant promptly and properly objected on the ground that it was contrary to section 90.05, Florida Statutes 1941, F.S.A., — and the trial judge sustained the objection, stating that payment was an affirmative defense; which it was. In addition to the authorities above cited, see 40 Am. Jur., p. 869, Sec. 229.
Counsel for appellant contend that Mr. Priestley's account book was not properly admitted in evidence; that section 90.21, Fla.Statutes 1941, F.S.A. provides that the "books of account of either party, in which the charges and entries shall have been originally made, shall be admissible in evidence in favor of such party," etc; from which counsel deduce that such book entries cannot be introduced against such party. However, this deduction is erroneous. If a party's own book entries are admissible in his favor, they are, a fortiori, admissible against him. The purpose of this section was to enlarge, not to restrict, the competency of parties as witnesses. Shoemaker v. Powers,78 Fla. 20, 82 So. 751. Shop books of account, of either party, in which the entries have been originally made, are admissible in evidence in favor of either party. Chapin v. Mitchell, 44 Fla. 225, 32 So. 875. But there should be proof that the entries were made by the party contemporaneously with the transaction, and should appear to have been honestly and regularly kept. Lewis v. Meginniss, 30 Fla. 419, 12 So. 19; Robinson v. Dibble's Adm'r,17 Fla. 457. See also 32 C.J.S., Evidence, § 694, pages 582-584, wherein it appears that book entries may be considered as an admission against interest and may be admitted in evidence. Such was the expressed view of the learned trial Judge.
Undoubtedly, the book of the deceased, Mr. Priestley, showed the receipt by him of the goods from Mrs. Priestley, and their value, but Mrs. Priestley apparently kept no account in her own books charging the deceased for the goods. At least, none were introduced. This is significant. And although she had about two years before Mr. Priestley died within which to attempt to collect her apparently good claim for the price or value of these goods, as shown by the book of the deceased to have been received, if she considered that she had such a claim, she made no such attempt; nor did she assert any such claim during his lifetime. And when, in October, 1946, counsel for Mrs. Priestley wrote two letters to the deceased with reference to the payment of rent for Mrs. Priestley's half interest in the Dania property, no mention whatsoever was made of any other claim against him; and when a little later, in November, 1946, the divorced husband and wife met in the attorney's office and agreed on what rental should be paid by him on the Dania property, not a word was said about any indebtedness due by Mr. Priestley for merchandise or any demand for payment for same. These circumstances create a strong presumption, in the absence of any explanation, that Mrs. Priestley did not then consider that she had any just or enforceable claim against him for the value of such goods. "Long delay in presenting or prosecuting a claim creates a strong presumption against its validity, particularly where the claim was not asserted in the lifetime of the alleged debtor." 24 C.J. 401; 34 C.J.S., Executors and Administrators, § 452, p. 277. See also Croft v. Croft, 219 Ala. 94, 121 So. 82. It may be that these deliveries of goods to Mr. Priestley may well have been a gift by a generous ex-wife to her former husband to help him get started in business.
For the reasons stated in the foregoing paragraph, we think the judgment in favor of the plaintiff on count one of the declaration should be reversed for a new trial. But the judgment on the second count is affirmed.
Affirmed in part and reversed in part and remanded for further proceedings.
ADAMS, C.J., and TERRELL and CHAPMAN, JJ., concur. *Page 216