FRANCIS MADISON, *Plaintiff in Error,* v. P. H. ROBINSON, AND M. K. ROBINSON, *Defendants in Error.*

En Banc.

Opinion Filed February 22, 1928.

322

*Philip D. Beall* and *John M. Coe,* Attorneys for Plaintiff
in Error;

*Watson & Pasco,* Attorneys for Defendants in Error.

BROWN, J.—This was an action of ejectment in the Cir-
cuit Court of Escambia County, wherein the plaintiffs re-
covered a judgment against the defendant, Francis Mad-
ison, to which she took writ of error. The property
involved was a house and lot in Pensacola. The plaintiffs,
P. H. and M. K. Robinson, claimed title as the sole heirs at
law of Robin Robinson, a negro, by a marriage alleged to
have been contracted in Dallas County, Alabama, with one
Nannie Quarles on January 25, 1876, proven by certified
copy of the marriage license and certificate of the officiat-
ing minister; whereas the defendant claimed title as the
sole heir-at-law of Robin Robinson by an alleged prior

common law marriage with one Eliza Washington, which took place in the same county in Alabama, and on the same plantation, Colonel Harris Walker's, several years "after the surrender of the Confederate Army." The defendant also sought to prove that the mother of the plaintiffs was a white woman, by reason of which it was contended her marriage to Robinson was illegal and that the plaintiffs were not the legitimate heirs of Rob Robinson. It appears that immediately after the formal marriage of Robin Robinson to Nannie Quarles, they came to Pensacola and lived there as husband and wife for some thirty-five years, and that after the death of Nannie Robinson, Robin Robinson continued to live in that city until his death some several years before the suit was brought. It also appears that Robinson was the owner of the house and lot involved in this case, and other property, at the time of his death, and that Francis Madison had been renting the property sued for from him for a considerable period of time.

At the conclusion of the plaintiff's testimony, the defendant placed Eliza Washington, the mother of the defendant, upon the stand. Thereupon the plaintiffs stated that they desired to reserve the privilege of objecting to and moving to strike out the testimony of the witness at the conclusion thereof, so as to avoid cutting into the questions and answers. This was agreed to by counsel for the defendant and allowed by the court.

Eliza Washington testified that she was married to Robin Robinson when she was fifteen or sixteen years old and some three or four years "after the surrender of the Confederate Army." That they both lived on Colonel Harris Walker's plantation near Selma, Alabama, and that the ceremony was performed at her father's house by an old preacher; that he read from the Bible, but she did not remember anything that he said except, "Salute the bride."

That he asked her if she would take Harris as her husband and asked him if he would take her as his wife, and then put their hands together. That they lived together and farmed for about five years during which period they had three children, all of whom died with the exception of the defendant, Francis Madison. That they lived together as man and wife and so treated each other. That Robin was employed by the white folks to take groceries to Nannie Quarles' mother, who lived about two miles away on her own plantation, and after one of these trips, Robin disappeared, and so did Nannie. She never heard from him until seven years later. She remained single for some twelve or thirteen years after he went away and then married again. That she did not get a divorce from Robin, as they had not obtained any license to marry and she did not think a divorce was necessary. That Nannie Quarles' mother was known as a white woman and was treated as such by the white folks.

Thereupon the plaintiffs objected to and moved to strike "all the testimony given by the witness, Eliza Washington, tending to show any transaction or communications between her and Robin Robinson, deceased, whom she claims was the father of the defedant, Francis Madison, on the ground that such testimony is as to transactions or communications with a person now deceased as against the heirs-at-law of such deceased person, claimed to have been had by this witness, who, if her testimony is true, would be directly interested in the result of this litigation as the widow of Robin Robinson, deceased, and is therefore in violation of Section 2705 of the Revised Statutes of the State of Florida, prohibiting any testimony as to transactions or communications claimed to have been had by a witness with a party at the time of the trial deceased, as against the heir-at-law of such deceased person, and on the ground

that the evidence in this case shows that the plaintiffs are the heirs of Robin Robinson, deceased. And the plaintiffs further move to strike the testimony of said witness on the ground that the defendant in the case, Francis Madison, if she is entitled to claim any interest at all in the property in question, claims through or under the witness Eliza Washington, as her mother, and as the alleged wife of Robin Robinson, deceased, which would, under our statutes, exclude any testimony of this witness in favor of this defendant as to any transactions or communications which this witness claimed to have had with her alleged deceased husband.''

The court sustained this objection and struck the testimony, which ruling forms the basis of the first assignment of error.

On first approach to a consideration of this question, it would appear that the plaintiffs in the court below were placed in a somewhat anomalous position in making this objection; that is, of asserting an interest in the suit on the part of the witness which, if true, would show that the plaintiffs had no right to recover. For if Eliza Washington really had an interest it could only have arisen by reason of her having been the legal common law wife of Robin Robinson, as claimed by her in her testimony thus objected to, and if this were true, then the plaintiffs, being the children of a subsequent bigamous marriage, would not be the heirs-at-law. On the contrary, this alleged interest, if well founded, would make Francis Madison, the defendant, the sole heir-at-law. In 1 Wigmore on Evidence, Sec. 584, it is said: ''The burden of proving disqualification by interest is upon the party objecting to the witness. This was never doubted. Although the state of the record might of itself serve to show the interest, still, so far as anything whatever needed to be done to make the interest apparent,

it must be done by the objector.'' And the following section, 585, continues: ''So far as a mere reference to the record of a cause does not suffice, the objector finds two sources of evidence available; first, evidence of the ordinary sort (from other persons), and secondly, the witness' own answers, either on his general examination or on a special preliminary examination (*voir dire*) had for the same purpose.'' See also Greenleaf on Evidence, Secs. 421, 424 and Croom v. Noll, 6 Fla. 52. In Sec. 425 of 1 Greenleaf on Evidence, it is, among other things, said: ''The question of interest, though involving facts, is still a preliminary question, preceding, in its nature, the admission of the testimony to the jury. It is therefore to be determined by the court alone, it being the province of the judge and not of the jury, in the first instance, to pass upon its sufficiency. If, however, the question of fact, in any preliminary inquiry, such for instance, as the proving of an instrument by subscribing witnesses, is decided by the judge, and the same question of fact afterwards recurs in the course of the trial upon the merits, the jury are not precluded by the decision of the judge, but may, if they are satisfied upon the evidence, find the fact the other way. In determining the question of interest, where the evidence is derived *aliunde* and it depends upon the decision of intricate questions of fact, the judge may, in his discretion, take the opinion of the jury upon them.''

It might be said in reply to this line of reasoning that it is the witness' belief that she possessed an interest in the suit, or the result thereof, however ill founded, which would have tended to affect the veracity of her testimony, and that this is exactly what the statute was designed to prevent. But it seems to be well settled that the disqualifying interest must be real, and not merely apprehended by the party and that it would be dangerous to rest the rule on

the judgment of the witness, and not on the fact itself, which would involve an inquiry into the grounds and degree of the witness' belief and would thus lead to complications, indefiniteness and much inconvenience. "For these reasons," says Greenleaf, (Sec. 387), "the more simple and practicable rule has been adopted of determining the admissibility of the witness by the actual existence, or not, of any disqualifying interest in the matter." However, in a note, he calls attention to the fact that there are some early but very respectable authorities holding that a witness believing himself interested is to be rejected as incompetent, but that the weight of modern authority is clearly the other way.

Another anomalous situation presented by this case is that in ruling upon this question the court was apparently required to prejudge the very question at issue in this suit, —that is, whether the plaintiffs or the defendant were the heirs-at-law of Robin Robinson. This led to the further anomaly that the court in instructing the jury to find for the plaintiffs was, in effect holding that Eliza Washington had no interest in the case, whereas he excluded her testimony upon the theory that it amounted to showing that she was an interested witness.

It might be said in reply to this that there was really no inconsistency in the court's rulings in view of the fact that he had a right to predicate his ruling upon the competency of Eliza's evidence on the facts which she herself testified to without stopping to make inquiry *aliunde* into the truth of those facts. Be this as it may, the anomalies above pointed out are sufficient to justify a careful consideration of the contention of counsel for plaintiff in error that the rule we have been discussing would not apply in a case of this kind so as to preclude testimony of this nature. Counsel earnestly and ably argue that this case should be

placed in that class of cases illustrated by Hays v. Ernest, 32 Fla. 18, 13 So. 451; Kumpe v. Coons, 63 Ala., 448; Nolan v. Doss, 133 Ala. 259, 31 So. 969; *In Re* Miller's Estate (Utah), 88 Pac. 338; Darrow v. Darrow, 201 Ala. 477, 78 So. 383. In the case of Hays v. Ernest, *supra,* this Court held that in a proceeding to establish or invalidate a will, the suit is one between living parties; that the cause of action does not exist until after the death of the testator, and he is in no sense then a party to the proceeding; that the subject matter of investigation is the act of the testator in executing the will, which is *not a transaction or communication between the testator and a legatee,* or heir-at-law and that therefore the heirs-at-law, next of kin and devisees are competent witnesses as to the *factum* of the execution of the will, citing among other cases the Alabama case of Kumpe v. Coons, *supra.* Indeed, this holding is supported by the great weight of authority as to cases involving the probate or contest of wills. 40 Cyc. 2266. In the case of Nolan v. Doss, *supra,* the Alabama Supreme Court, speaking through Dowdell, J., said, ''The competency of the wife to testify to the fact of her marriage with the deceased husband is not affected by the exception contained in Section 1794 of the Code. The contest here is between the parties claiming to be distributees of the estate,—as to whether the appellees are the distributees, or the appellee, Julia Doss, is the sole distributee. The estate of the decedent is not interested in the result of this controversy, within the meaning of the statute.'' In the case of Darrow v. Darrow, *supra,* which was a suit to determine which of two persons was the lawful widow of the intestate, the same court, speaking through Anderson, C. J., said, ''The appellee was not precluded by the exception contained in Section 4007 of the Code of 1907 from testifying as to her marriage with the decedent and the facts connected therewith, for

the effect of same would not diminish the assets of his estate, or fasten a liability upon same, as the issue involved a contest merely between rival claimants to take or share in the distribution of the said estate under the law.'' But the proviso or exception in the Alabama statute reads,— ''except that no person having a pecuniary interest in the result of the suit or proceeding shall be allowed to testify against the party to whom his interest is opposed as to any transaction with or statements by the deceased person whose estate is interested in the result of the proceeding,'' etc. It is contended that this variation from the language of our own statute, which does not require in all cases that the estate of the deceased person be interested in the result of the proceeding, would not affect the proposition above discussed, for in this case the estate of the deceased, Robin Robinson, is not in any wise interested in the result of this ejectment suit. That the administration of the estate having been closed, and the contest being between alleged heirs-at-law, living parties, as to which of them is entitled to legal recognition as such, the result of the suit could in no wise increase or diminish the estate left by Robinson at the time of his death.

It is further insisted by counsel for plaintiff in error that in the case at bar the conflict is between parties claiming under alleged different marriages of the decedent, and that no distinction exists between their situation and the situation of those claiming under a will alleged to have been made by the deceased in his lifetime and those claiming as heirs-at-law on the theory that the alleged will was either not executed at all or that its execution was obtained by undue influence; that if the execution of a will, witnessed by a legatee thereunder, is not a ''transaction or communication'' between such witness and the deceased, why should the assumption of the marriage status between the witness

and the decedent be so considered. It is further insisted that it is substantially true that, in such an investigation as to whether or not the marriage status actually existed, in a suit between the alleged heirs-at-law, and not against the estate of the deceased, the parties to the suit and those interested in the result, are, as a general rule, upon terms of substantial equality in regard to producing and giving evidence as to the existence *vel non* of such alleged prior marriage relation.

Defendants in error, on the other hand, contend that they are not upon terms of equality as to such testimony, and insist that Eliza Washington was, in fact, testifying to a *transaction or communication between herself and the deceased* had more than fifty-five years before the trial of this case, and that in this case the parties certainly are not upon terms of equality in respect to proving or disproving this particular fact; and that this case is an excellent illustration of the wisdom of the proviso laid down in Section 2705, Revised General Statutes, and that Eliza Washington's testimony clearly falls both within the letter and spirit of such rule. They contend that to admit testimony as to such transactions and communications might be made the instrument of depriving of substantial property rights the lawful heirs of a deceased person whose lips have been sealed by death, and of adjudging them to be illegitimate children. This raises a very interesting and important question, and one not free from difficulty.

We have, however, reached the conclusion that the competency *vel non* of the testimony in question cannot be disposed of by holding that this case falls within the above class of cases cited by plaintiff in error, including that of Hays v. Ernest, *supra*. Pretermitting for the present the question as to whether Eliza Washington's testimony was sufficient to show that she was ''interested in the event of

the suit,'' we are clearly of the opinion that it pertained to ''a transaction or communication with the deceased,'' which distinguishes it from the case of Hays v. Ernest. ''Transaction and communication'' are words of quite comprehensive import. Halliday v. McKinne, 22 Fla. 153; Chapin v. Mitchell, 44 Fla. 225, 32 So. 875. While marriage, whether formally solemnized or a common law marriage, is something more than a mere contract, it is nevertheless a contract. It is founded upon the mutual consent and agreement of the parties. Marsicano v. Marsicano, 79 Fla. 278, 84 So. 156; Chaves v. Chaves, 79 Fla. 602, 64 So. 672. It is therefore necessarily a ''transaction'' as well as a ''communication'' between the parties.

The fact that the estate of the deceased is not interested in the result of this case is not material to this question, as it was in the Alabama cases cited, for the reason that our statute, unlike the one in Alabama, applies not only to suits where such testimony is offered against the estate of such deceased person, but also to suits where it is sought to be produced against his heirs-at-law. It is true that whether the plaintiffs in this case were the sole heirs-at-law was the real question in controversy; but at the time this testimony was offered by the defendant, evidence had been introduced which, if believed, was sufficient to prove that the plaintiffs were the heirs-at-law, as claimed by them, and which claim formed the basis of their suit.

But we have reached the conclusion that the court below was in error in excluding this testimony upon another ground. Admitting *arguendo* that this testimony of Eliza Washington was sufficient, *prima facie* at least, to prove a valid common law marriage between her and the deceased, the question still remains whether she was (1) interested ''in the event of the suit,'' or (2) a person ''from, through or under whom'' the defendant derived any interest or

title, "by assignment or otherwise." See the Statute, Sec. 2705, Revised General Statutes, 1920.

As to the first question, we think it is disposed of in Adams v. Board of Trustees, 37 Fla. 266, 20 So. 266, where, quoting from Greenleaf on Evidence, Sec. 390, it is said: "The true test of the interest of a witness is that he will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence, for or against him, in some other action. It must be a present, certain and vested interest, and not an interest uncertain, remote or contingent." Further on in the same section the author says, "And if the interest is of a doubtful nature, the objection goes to the credit of the witness, and not to his competency." And in Sec. 389 of the same work (Greenleaf on Evidence, 15th ed.), the following appears: "The disqualifying interest of the witness must be in the event of the cause itself and not in the question to be decided. His liability to a like action, or his standing in the same predicament with the party, if the verdict cannot be given as evidence for or against him, is an interest in the question only, and does not exclude him."

The apparent view of the trial court was that if Eliza Washington's marriage was legal, she took dower in the land; hence her interest. But would the judgment in this ejectment suit give or take away her dower? Would the record in this ejectment suit even if judgment went for the defendant, be legal evidence in her favor on a proceeding for admeasurement of dower? Clearly not. In such a proceeding she would have to prove marriage anew, and the lands would be as much subject to her dower in the hands of the Robinsons as in Francis Madison's. We think this is the inevitable conclusion to be reached from the reasoning employed in the able opinion of TAYLOR, J., in the cited case of Adams v. Board of Trustees, as appearing on

pp. 287-292 of 37 Fla. We will quote only a .part of what was said with reference to the competency of the witness Corley.

"We do not think that he was disqualified. He was not a party to the suit, directly or indirectly, and did not have that present, certain and vested interest in its immediate result that was necessary to disqualify him. Neither do we think that the record in this cause, no matter how it may have resulted, could have been used as evidence for or against him in any other cause. It is contended that he was interested in establishing the defense interposed by the defendants, as it would relieve him of liability to the defendants as trustees for the coupons turned over to Adams by him. It may have been true that he was interested in establishing *the abstract fact* that he had turned over to Adams the amount of coupons that he testified that he had delivered to him, but the establishment of that fact in this suit, no matter how it resulted, could not have had the direct effect of relieving the witness from further liability to account in another suit to the defendant trustees for the coupons so testified to have been delivered. Neither could *the record* in this cause, no matter what the result, have been used by the witness in any suit against him by the trustees as an adjudication or establishment of the fact of such delivery of coupons by him. Nor, had this suit resulted against the trustees, could the record therein be used against the witness, in a suit for such an accounting by the trustees, as an adjudication or establishment of the fact that he had not delivered to Adams the coupons he claims to have turned over to him. *An interest by the witness simply in the question involved did not disqualify, but he must have been so interested in the result of the suit as that he would gain or lose directly or immediately thereby, or that the record therein could be used as legal evi-*

*dence for him or against him in some other suit as an establishment or disestablishment of the matters testified about by him.''* (Italics ours.)

See also Showmaker v. Powers, 78 Fla. 20, 82 So. 751, and 28 R. C. L. 472-473, Sec. 60, wherein it is said: ''And the rule has been laid down and applied that if the judgment in a case could be given in evidence against the witness in another action, in relation to the same subject, then he is disqualified, otherwise he is not. Accordingly, an interest in the question involved does not debar; and a witness' belief as to his interest is entirely immaterial.''

Counsel for defendants in error argues that Eliza Washington is interested in the event of the suit because if Francis Madison successfully defends by the use of her testimony, she may in a proceeding by Eliza for admeasurement of dower be estopped to question its truth. But this would be an estoppel *in pais,* and the rule of exclusion contemplates an estoppel by *the record.* This question was treated, adversely to this contention, in the case of Adams v. Board of Trustees, *supra,* as shown by the brief quotation therefrom above given.

It is further argued that this question regarding the interest of the witness was settled by the decision of this Court in the case of Boot v. Lenox, 45 Fla. 193, 34 So. 566. In that case, the heirs-at-law of James R. Booth sought partition of certain lands standing in his name at the time of his death. His widow, by answer and a cross-bill, sought to impress a resulting trust upon such real estate, alleging that it was purchased with her money, and that her husband during his lifetime frequently asserted that the property was hers and paid for with her money. Some of the heirs-at-law testified that the monies with which the property was purchased were monies of the deceased ancestor derived partly from insurance on property and partly from

earnings in carpentry work. After reciting these facts, this Court in the opinion by TAYLOR, C. J., held that this testimony on the part of the heirs involved communications between them and the deceased and "removed the prohibition against the living wife's testifying as to such transactions and qualified her, under the statute, to give her version of them." In this case the widow was not only a party to the suit, but was directly interested in the event thereof, and, of course, the statutory rule of exclusion applied, the defendants being the heirs-at-law; and the operation of the rule was removed for the reasons stated and which are based on the statute. This case is therefore not in point here. We conclude, therefore, that Eliza Washington was not, within the meaning of our statute, interested in the event of the suit.

We come now to the second question: Was Eliza Washington a person "from, through or under whom" the defendant Francis Madison "derived any interest or title, by assignment or otherwise?" In support of the ruling of the court below, defendants in error contend that Francis Madison claims title to the property not because she is the child of Robin Robinson alone, but because she is the legitimate child of Robin Robinson by his lawful wife, Eliza Washington. That, therefore, the latter is a person from, through or under whom Francis Madison claims an interest in the property, "by assignment or otherwise," thus rendering her testimony inadmissible. The case of McClanahan v. McClanahan (Iowa), 105 N. W. 833, is cited. In that case it was held that where a claim against a decedent's estate arises out of a payment of money to the decedent in trust for the claimant, the person making the payment to the decedent was incompetent to testify thereto on claimant's behalf, under the Iowa statute providing that no person from whom a party in interest "derives his interest by

assignment or otherwise'' shall be examined as a witness as to any personal transaction with the deceased person against the executor of such person. In the opinion the court said: ''It is not necessary that the interest should be derived by transfer or assignment. It may be 'otherwise,' and, as used, that word is one of broad significance. It means that if the right asserted by a claimant depends for its existence and validity upon a transaction between the deceased and a third person, the evidence of such third person shall not be allowed to prove the transaction.'' The rather broad language in the opinion in the cited case must be construed in the light of the facts in that case, which are far from being parallel with those in the case at bar. If Eliza Washington had transferred the property involved in this case to a third person in trust for the benefit of Francis Madison, and if this were a suit brought by Francis Madison to enforce such trust, Eliza would no doubt be an incompetent witness, not only under the Iowa case just cited, but also under our own case of Booth v. Lennox, *supra*. But in the case at bar the title to the property was never vested in Eliza Washington. If she was, as she claims, the lawful wife of the decedent, her only interest in the property was a right of dower, which, so far as this record shows, she has never attempted to release or assign to anyone. Doubtless the reason for including this language in our statute, which is omitted from many similar statutes in other states, was to prevent fraudulent assignments or transfers of property rights for the purpose of qualifying the assignors or transferrors as witnesses, and probably also upon the theory that such persons having transferred the right, are responsible, morally or legally, for its validity, and are therefore still, in a way, interested in the action. But in the case at bar the witness had never transferred or conveyed ''by assignment or otherwise'' to

the defendant the property in question or any interest therein. Robin Robinson was the sole owner of the property, and Francis Madison's only claim of title is that she acquired the same by inheritance from Robin Robinson. The statute, repealing the common law rule, the unwisdom of which has become so apparent, provides that, "No person, in any court * * * shall be excluded from testifying as a witness by reason of his interest in the event of the action or proceeding, or because he is a party thereto;" then follows the proviso or exception which we have been considering. It is a well settled rule, in the construction of civil statutes, that where the enacting clause is general in its language and objects, and a proviso is introduced, the proviso is construed strictly and takes no case out of the enacting clause which does not fall fairly within its terms. It is also generally held that the terms of the exception in statutes of this sort will not be extended by judicial construction, nor will testimony be excluded where the case is not clearly within the terms of the statute. 40 Cyc. 2261. And our own Court has frequently held that the purpose of this statute was to enlarge, not to restrict, the competency of parties as witnesses. It would require a strained construction of this statute to hold that Francis Madison derived any interest or title in this property from the witness, Eliza Washington.

It appearing, therefore, that Eliza Washington was neither a party to the suit, nor interested in the event thereof, nor a person from, through or under whom the defendant derived any interest or title by assignment or otherwise, the court below erred in sustaining the objection of the plaintiffs to that portion of the testimony of the witness above referred to, upon the grounds interposed.

As the testimony of this witness was stricken in its entirety, it must have been upon the grounds we have been

discussing, the court stating in sustaining the objection that his action was based upon the question of the incompetency of the witness. This makes it unnecessary to consider those grounds of objection addressed to particular portions of the testimony of this witness, as well as grounds not insisted upon in argument.

The second assignment of error reads: "The court erred in sustaining the motion of plaintiffs to strike the following testimony of the defendant Francis Madison: 'The reason I remember was because he would take me up and play with me,' and in striking same." As this witness was the defendant in the case this portion of her testimony was properly excluded.

The third assignment of error is directed to the refusal of the court, upon objection of the plaintiffs, to permit the defendant to read in evidence a decision of the Supreme Court of Alabama in the case of Bynon v. The State, 23 Southern Reporter 640. This opinion was offered to show that common law marriage is recognized in Alabama and as indicating what character of evidence was admissible to prove such a marriage. The fourth assignment is based upon a similar ruling with reference to the decision of the same State, reported in Volume 69 of the Southern Reporter, page 885. We have a statute regarding this matter. Sec. 2716, Revised General Statutes, reads: "The unwritten or common law of the United States, or any of the States or Territories thereof, may be proved as facts by parol evidence, and the books or reports in cases adjudged in their courts may also be admitted as evidence of such law." Nothing is said in this section about such books of reports being the official reports of such State or Territory; nor, as is provided by Sec. 2715, Revised General Statutes, pertaining to the proof of statute law, is there anything in Sec. 2716 to the effect that they must purport to be pub-

lished under the authority of the respective governments, or must be shown to be commonly admitted and read as evidence in their courts, as a condition precedent to admissibility. If, as provided by Sec. 2716, the unwritten or common law of another state may be proved in this State by "parol evidence," as well as by "books of reports in cases adjudged in their courts," we see no objection to the use of such books of reports of cases adjudged in their courts as those constituting what is known as the National Reporter System, published by the West Publishing Company. The contrast between Secs. 2715 and 2716, which latter section makes no restriction with reference to the authentication of reports of adjudged cases, was probably due to the fact that such reports were, generally, in the past, and many are now, the works of unofficial reporters. And if, as provided by our statute, the common law of another state may be proved by parol evidence, why should it be considered an unreasonable construction of the statute to hold that it may be proved by the use of such a universally accepted system of reports of decided cases as was attempted by the defendant in this case? In the case of Beckley v. United States Savings & Loan Co., 147 Ala. 195, 90 So. 655, it was held that the opinion of the Supreme Court of Minnesota, in 70 North Western Reporter 609, was properly admitted in evidence to show the construction of the statutes of that state governing the case then before the court. The case of Rogero v. Sippel, 33 Fla. 625, 15 So. 326, was dealing with an attempt to prove the *statute law* of New York by the use of a publication made by a private party which did not purport to have been published under the authority of the State of New York, and no evidence of its being commonly admitted and read as evidence in the courts of that state had been given. That case was manifestly governed by Sec. 2715, Revised General

Statutes, which then composed one of the sections of Mc-Clellan's Digest. As is aptly said in the brief of plaintiff in error in this case, ''The early English reports were all unofficial, yet these may clearly be read in evidence here. And would it not be preposterous to decide the most intricate questions of law upon demurrer or appeal on the authority of the universally used Reporter System, and then in the face of so liberal a statute as ours, imagine into it a restriction which would bar it from the court room?'' We think, therefore, that assignments of error, three and four, were well founded.

The fifth assignment of error attacks the refusal of the court to permit the defendant to read in evidence Secs. 5005 and 9004 of the Code of Alabama of 1923. The first of these sections forbids the intermarriage of white and negro persons; the latter penalizes persons who marry others without a license, thereby recognizing, as plaintiff in error contends, that such marriages can be had. We do not think the contention as to the latter section is tenable, and it is our opinion that the court was free from error in its ruling as to Sec. 9004 of the Alabama Code. These two sections of the Code were offered in evidence at one and the same time, objection sustained, and this ruling is attacked in a single assignment of error. They are numbered in the transcript as Secs. 5001 and 9004. While we are inclined to the opinion that the first section, if it had been offered separately, should probably have been admitted, the court below will not be held in error for refusing to admit both of them when offered together, the latter section being irrelevant and inadmissible. The rule is well settled in this State that where an assignment of error groups the court's ruling upon the validity of two or more pleas, the assignment must fail unless the ruling was erroneous as to both pleas. Charlotte Harbor & N. Ry. Co.

v. Pruitt, 81 Fla. 152, 87 So. 427. This rule might well be applied to rulings upon the evidence, and has been applied where a single assignment attacked a plurality of rulings. See 1 Fla. Dig., 206. · We are inclined to the view, however, that if there was any error in refusing to admit the first section of the Alabama Code above referred to, it was error without injury, as, considering the entire evidence offered by both sides on the question whether Nannie Quarles was a white woman or a negro, we do not think the evidence tending to show that she was a white woman was sufficient to have sustained a verdict to that effect by the jury. The evidence introduced by the defendant was sufficient to raise a suspicion that she might have belonged to the white race, but did not rise to the dignity of proof, and, when considered in connection with the rebuttal testimony, was in our opinion hardly sufficient to have put the trial court in error in refusing to let that question go to the jury.

Under the sixth assignment of error, it is claimed that the court erred in refusing to permit the defendant to propound to the witness Eliza Washington the question: "At that time, was Robin Robinson a married or single man?" If it had been shown that the witness *knew* the fact inquired about, this question might have been proper, as it related to the time of the alleged marriage; but in the situation shown by the record the court below was free from error in this ruling.

The eighth assignment of error attacks the action of the court in instructing the jury, on plaintiff's motion, to find the verdict for plaintiff. If the court had not already excluded the testimony of Eliza Washington, its action on this motion might have been different. As the case must be reversed for another trial on account of the errors hereinabove pointed out, we deem it unnecessary and inappropriate to discuss the weight of the testimony in respect to

its sufficiency to sustain this action of the court, except in so far as to say that if the testimony of Eliza Washington had not been excluded, we are of the opinion that her testimony in connection with that of the other witnesses produced by the defendant, was sufficient to have authorized the court to submit the case to the jury, under the plea of the general issue.

It is contended by defendants in error that the action of the court in giving the affirmative instruction should be sustained upon another ground; that is, that Francis Madison was a tenant of the plaintiffs and in possession under them, hence estopped to deny their title. To give rise to estoppel of a tenant to deny his landlord's title, it must first be shown that the relation of landlord and tenant in fact existed between the parties as regards the land in question. Whether this relationship existed between these parties was one of the points in controversy in the court below, and the evidence in this respect was conflicting—sufficiently so, in fact, to have required the court to submit such question to the jury.

What has been said above, we deem sufficient for the purposes of another trial without discussing the other assignments of error.

Reversed.

WHITFIELD, P. J., AND STRUM AND TERRELL, J. J., concur.

ELLIS, C. J., AND BUFORD, J., dissenting.