TILLMAN PEARSON, Judge.
The appellant claimed dower as the common-law wife of Julius Lee Silverman, deceased. Silverman died testate on February 20, 1962, remembering the appellant in his will of February 6, 1962, but he failed to describe the appellant as his wife. Being dissatisfied with the portion of the estate left her under the will, she filed an election to take dower. Objections to the election were filed and upon trial of the issue before the County Judge at the conclusion of the petitioner’s case, the court granted the motion of the respondent-appellee to dismiss *322 the petition of the appellant. It is from this order, which in effect denied the- appellant’s claim that she was the wife of Julius Lee Silverman, that this appeal is brought.
Appellant presents two points. First, it is urged that the court erred in granting the motion in the nature of a directed verdict because the appellant had established a prima facie case. Second, it is urged that the court erred in excluding testimony of the petitioner that she and the deceased agreed to be husband and wife.
Under appellant’s first point, she urges that the evidence was sufficient to establish a prima facie case of common-law marriage. Viewed in its most favorable light, the testimony of the appellant’s witnesses proved only that she and the deceased lived together in one house and that some of their neighbors thought they were married. This testimony was not enough to establish a common-law marriage because there is nothing in this record to establish an agreement between the parties to be husband and wife. In addition, we find no clear showing that the reputation of the parties in the community was that of hus-. band and wife. There is evidence that the appellant continued to use her maiden name. Furthermore, there is the strong evidentiary fact that only a few days before his death, the deceased made a will in which he mentioned the appellant but declined to acknowledge her as his wife. We hold that the County Judge correctly found that the evidence presented was not sufficient to establish a prima facie case of common-law marriage.
We turn now to appellant’s second point. It is contended that the chancellor erred in not admitting into evidence her testimony that she and the deceased agreed to be man and wife. This testimony was excluded under the Dead Man’s Statute, § 90.05, Fla.Stat., F.S.A. The appellant urges that the application of the statute was erroneous. She agrees that it is generally held that where a woman claims to have been the wife of a deceased person, and, as such, is entitled to property owned by him, she is incompetent to testify as to her transaction of marriage with the deceased. But notwithstanding this, she urges that her testimony should have been admitted under an exception to the rule because there was no other means of proving the marriage.
We have recently held in Levine v. Feuer, Fla.App.1963, 152 So.2d 784, 787, that the Dead Man’s Statute is ordinarily applicable to exclude such testimony as was proffered here. It does not appear, however, that in the Levine case we considered the possible application of the doctrine of “Ex Necessitate Rei”. The appellant points out that the Supreme Court of Florida in Catlett v. Chestnut, 107 Fla. 498, 146 So. 241, 91 A.L.R. 212, expressly declined to rule upon the applicability of the doctrine in an action against an estate by a woman who claimed a common-law marriage with the deceased. It is urged that this mention of the doctrine by the Supreme Court of Florida indicates an inclination to seriously consider the application of the doctrine in future cases.
The comment of Mr. Justice Davis speaking for the Court in Catlett v. Chestnut is quoted because it is all that we have in Florida on the point.
“That Addie Irene Catlett is an interested party is obvious, because if she obtains a judgment in this case by reason of establishing the common-law marriage she is claiming under, she will gain considerable in money and property. That an alleged common-law marriage with a deceased person is a transaction within the meaning of this statute was declared in Madison v. Robinson, 95 Fla. 321, 116 So. 31.
“Conceding for the sake of argument, but not deciding the proposition to be sound, that under the rule ‘ex necessitate rei,’ which constituted a well-recognized exception to the common-law rule of disqualification of inter *323 ested witnesses (1 Greenleaf on Evidence [15th. Ed.] § 348; 12 Encyclopedia Evidence, page 1004), a party to an alleged marriage per verba de prae-senti may be permitted to testify to the fact of a mutual agreement and consent to marry necessary to make out such a marriage in cases where there would be no other means of proving it, this is not such a case. Here the petitioner claimed to have had a witness to the marriage agreement, and that witness was produced and testified in the case. No reason for applying the rule ‘ex necessitate rei’ was therefore made to appear, and petitioner’s testimony as to her ‘transaction’ of marriage with the deceased Catlett was properly ruled out by the trial judge.”
The Catlett case is also the only case cited for the possible existence of the exception in 3 Jones, Evidence, § 769 (5th ed. 1958). The existence of the exception is not mentioned in American Jurisprudence in the discussion of the competency of a witness to testify as to. a common-law marriage with a deceased person.
In 97 C.J.S. Witnesses § 221b (1957), it is stated:
“The exception to the common-law rule of disqualification because of interest, which allowed an interested witness to testify where his testimony was absolutely necessary, does not permit an interested witness to testify to a common-Iaw marriage with deceased where she claims to have another witness to the ceremony who has already testified.”
Catlett v. Chestnut is the only case cited as authority for the above statement.
Professor Wigmore omitted the section of Greenleaf cited in Catlett v. Chestnut in his revision of 1 Greenleaf, Evidence, (16th ed. 1899) but the section appears in Appendix II of the revision and explains the exception as one originating from the common-law rule which excluded parties to an action from testifying on the ground of interest in the outcome of the suit.[1]
Appellant has been unable to cite, and we have found no modern case applying the rule “Ex Necessitate Rei” as an exception to the Dead Man’s Statute. A great many states have statutes similar to our own. 2 Wigmore, Evidence, § 578 (3rd ed. 1940).
Essentially the question is one of public policy. Because there is- authority for the existence in the common law of the rule “Ex Necessitate Rei” as an exception to the rule excluding witnesses for interest, the courts could have engrafted it as an exception to the statutory exclusion of parties as witnesses for interest when the opposite party is dead. The failure to do so over the long period since the adoption of statutes similar to ours, indicates a holding that such a change in the law would be legislative in nature and should properly *324 be left to that branch of the government. We think such a conclusion is proper and we decline to recognize the proposed exception to a body of established law. Cf., Weinstein v. Weinstein, Fla.App.1963, 148 So.2d 737.
Affirmed.

. “§ 348. Parties may testify in certain excepted cases. But to the general rule, in regard to parties, there are some exceptions in which the party’s own oath may be received as competent testimony. One class of these exceptions, namely, that in which the oath in litem is received, has long been familiar in courts administering remedial justice, according to the course of the Roman law, though in the common-law tribunals its use has been less frequent and more restricted. The oath in Mtem, is admitted in two classes of cases; first, where it has been already proved that the party against whom it is offered has been guilty of some fraud or other tortious and unwarrantable act of inter-meddling with the complainant’s goods, and no other evidence can be had of the amount of damages; and, secondly, where, on general grounds of public policy, it is deemed essential to the purposes of justice * * *. ITor, where the law can have no force but by the evidence of the person in interest, there the rules of the common law, respecting evidence in general, are presumed to be laid aside; or rather, the subordinate are silenced by the most transcendent and universal rule, that in all cases that evidence is good, than which the nature of the subject presumes none better to be attainable.”